**Affirm in part, Reverse in part, Render in part and Remand Opinion Filed September 18, 2013**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-12-01359-CV**

**CITY OF MCKINNEY, TEXAS, Appellant**
**V.**
**HANK'S RESTAURANT GROUP, L.P., Appellee**

**On Appeal from the 366th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 366-03124-2012**

## OPINION

Before Justices FitzGerald and Lewis[1]
Opinion by Justice FitzGerald

This is an interlocutory appeal from the trial court's order denying pleas to the jurisdiction filed by appellant City of McKinney, Texas. We affirm in part and reverse in part.

### I. BACKGROUND

**A.      Summary of the allegations**

Appellee Hank's Restaurant Group, L.P. (HRG) operates a restaurant and live-music venue in McKinney, Texas, named Hank's Texas Grill. According to HRG, the City has harassed HRG, its employees, and its customers ever since Hank's Texas Grill opened in 2003. The City denies HRG's allegations. Further, the City alleges that the premises of Hank's Texas

---

[1] The Honorable Mary L. Murphy was on the panel and participated at the submission of this case. Due to her resignation from the Court on June 7, 2013, she did not participate in the issuance of this opinion. *See* TEX. R. APP. P. 41.1(a), (b).

Grill violate numerous fire, building, and food-service regulations found in the City's ordinances. Each side seeks injunctive relief against the other.

## B.    Procedural history

This interlocutory appeal arises from a pair of lawsuits that were consolidated into one on the same day the trial judge denied the City's pleas to the jurisdiction.

HRG won the race to the courthouse, filing its lawsuit against the City on August 23, 2012. In its original petition, HRG alleged that City police officers had engaged in a ten-year campaign of harassment and intimidation against the customers and staff of Hank's Texas Grill. HRG further alleged that City police officers and firefighters disrupted live-music events at Hank's Texas Grill by falsely claiming that the occupancy load for the premises had been exceeded. HRG also alleged that the City conducted an inspection of the premises in June 2012 and claimed that the premises contained about eighty code violations. HRG further alleged that on August 9, 2012, the City sent HRG a letter threatening to sue HRG if HRG did not within seven business days sign a "compliance plan" agreeing to do everything required by the City. HRG alleged that the City's conduct was illegal for various reasons, such as the inapplicability or unenforceability of the City ordinances on which the City was relying. HRG sought a declaratory judgment that the City's conduct was improper, as well as temporary and permanent injunctive relief against the City. The trial judge signed a temporary restraining order in favor of HRG the same day.

The next day, August 24, 2012, the City filed its original petition against HRG under Chapters 54 and 211 of the local government code. The City alleged that it had conducted a site inspection of Hank's Texas Grill in June 2012 and discovered numerous violations of fire, building, and food-service ordinances. The City further alleged that the violations created a danger to the public's life, health, property, and safety. The City sought a declaratory judgment

that HRG was in violation of City ordinances, temporary and permanent injunctive relief, and attorneys' fees under the Texas Uniform Declaratory Judgments Act. The City's lawsuit was assigned to the same trial court as HRG's first-filed lawsuit, the 366th Judicial District Court.

In HRG's suit, the City filed an original answer on September 4, a first amended answer on September 6, and a second amended answer on September 24. Each pleading contained a plea to the jurisdiction contesting the court's subject-matter jurisdiction over HRG's claims. Each pleading also contained a request for an award of attorneys' fees under the Declaratory Judgments Act. The City did not otherwise assert any counterclaims against HRG in its pleadings.

In the City's suit, HRG filed an answer, counterclaim, and application for injunctive relief. In that pleading, HRG substantially repeated the factual allegations and the claims for declaratory and injunctive relief that it had pleaded in its own first-filed lawsuit. HRG also alleged that the City's conduct had proximately caused HRG to suffer up to $250,000 in damages. On September 18, the trial judge heard and granted HRG's request for a temporary restraining order. In the TRO, the judge set HRG's request for a temporary injunction for hearing on September 24. On September 24, the City filed its original answer to HRG's counterclaim. The original answer included a plea to the jurisdiction and a request for attorneys' fees under the Declaratory Judgments Act.

The trial judge held a hearing on September 24, 2012. The reporter's record from the hearing reflects that there was some disagreement about which motions were set for hearing at that time. It apparently was undisputed that HRG's request for a temporary injunction in its case and the City's request for a temporary injunction in its case were both set for hearing. The City took the position that its plea to the jurisdiction in HRG's case was also set for hearing, but HRG disagreed. The judge decided that he would hear the City's pleas to the jurisdiction in both cases

and then give HRG time to file additional briefing on the jurisdictional issues. The judge gave the parties a deadline of October 1 to file jurisdictional briefing and advised the parties that he would rule on the pleas to the jurisdiction on October 2 without a second hearing.

On October 1, HRG filed a response to the City's plea to the jurisdiction in each of the two cases, and the City filed a brief in support of its plea to the jurisdiction in HRG's case. On that same day, HRG also filed an identical amended pleading in each of the two cases. The amended pleading is largely the same as HRG's answer to the City's lawsuit, but it contains additional material in response to the City's claim of immunity, and its prayer for relief is slightly different from the prayer in HRG's prior answer.

On October 2, the trial judge signed two orders. In one order, the judge sua sponte consolidated the two cases, specifically consolidating the City's case into HRG's first-filed case. The other order is entitled "Order Denying Plea to the Jurisdiction." In that order, the judge denied the City's pleas to the jurisdiction but also acknowledged that the City retained its immunity from claims for monetary relief in excess of any amounts necessary to offset the City's monetary claims.

The City timely filed its notice of interlocutory appeal from the order denying its plea to the jurisdiction. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8) (West Supp. 2012) (authorizing interlocutory appeal from order denying a plea to the jurisdiction by a governmental unit).

## II. STANDARD AND SCOPE OF REVIEW

We review an order denying a plea to the jurisdiction de novo. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004).

A plea to the jurisdiction can challenge the sufficiency of the claimant's pleadings or the existence of necessary jurisdictional facts. *See id*. at 226–28. The City did not adduce any

–4–

evidence to support its pleas to the jurisdiction, so the instant case involves a challenge to the sufficiency of HRG's pleadings. As the claimant, HRG bears the burden of pleading facts that affirmatively demonstrate that governmental immunity has been waived and that the court has subject-matter jurisdiction. *See City of Dallas v. Turley*, 316 S.W.3d 762, 767 (Tex. App.—Dallas 2010, pet. denied). We construe the pleadings in the claimant's favor and look to the pleader's intent. *Miranda*, 133 S.W.3d at 226. If the pleadings do not contain enough facts to demonstrate the propriety of jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the claimant should be afforded the opportunity to amend. *Id*. at 226–27. This opportunity shall be given after a court determines that the pleadings are insufficient. *Lazarides v. Farris*, 367 S.W.3d 788, 803–04 (Tex. App.—Houston [14th Dist.] 2012, no pet.). But if the pleadings affirmatively negate the existence of jurisdiction, the plea may be granted without giving the claimant an opportunity to amend. *Miranda*, 133 S.W.3d at 227.

The parties disagree whether HRG's October 1, 2012 amended pleading is its live pleading for purposes of our analysis. HRG assumes that the amended pleading is its live pleading; the City argues in its reply brief that it is not. We conclude that it is. The trial judge conducted a hearing on September 24, 2012, but the parties disputed whether the City's pleas to the jurisdiction were among the matters set for hearing at that time. The trial judge gave the parties a deadline of October 1, 2012, to file jurisdictional briefs and advised that he would rule on the pleas on October 2 without another hearing. HRG filed its amended pleading on October 1, and the judge's October 2 order denying the City's pleas to the jurisdiction recites simply that the judge "reviewed the pleadings of the parties." The rules of civil procedure do not prescribe a deadline for filing amended pleadings before the hearing or submission of a plea to the jurisdiction. *See Grand Prairie Hosp. Auth. v. Tarrant Appraisal Dist.*, 707 S.W.2d 281, 283 (Tex. App.—Fort Worth 1986, writ ref'd n.r.e.) (holding that a hearing on a plea to the

–5–

jurisdiction is not a "trial" under Rule 63, and so amended pleading filed after hearing but before ruling was appellant's live pleading); *see also* Rebecca Simmons & Suzette K. Patton, *Plea to the Jurisdiction: Defining the Undefined*, 40 ST. MARY'S L.J. 627, 670–71 (2009) (noting the "lack of clearly defined procedure" to govern pleas to the jurisdiction). Because the rules prescribe no deadline for pleadings amendments before the hearing or submission of a plea to the jurisdiction, and because the trial judge recited that he "reviewed the pleadings of the parties," we conclude that HRG's amended pleadings were the live pleadings before the trial judge when he denied the City's pleas to the jurisdiction.[2]

### III. GOVERNMENTAL IMMUNITY

### A. The law of governmental immunity

Governmental immunity is a common-law doctrine. *City of Dallas v. Albert*, 354 S.W.3d 368, 373 (Tex. 2011). It applies to political subdivisions of the State, while the immunity of the State itself is referred to as sovereign immunity. *Id*. at 372 n.2. "When performing governmental functions, political subdivisions derive governmental immunity from the state's sovereign immunity." *City of Houston v. Williams*, 353 S.W.3d 128, 134 (Tex. 2011) (footnote omitted). Governmental immunity comprises both immunity from liability and immunity from suit. *Albert*, 354 S.W.3d at 373. "Immunity from liability protects entities from judgment while immunity from suit deprives courts of jurisdiction over suits against entities unless the Legislature has expressly consented . . . ." *Id*. Thus, the legislature can waive a political subdivision's governmental immunity. *See id*. at 374 ("[W]aivers of sovereign immunity or consent to sue governmental entities must generally be found in actions of the Legislature.").

---

[2] The City also objects to affidavits attached to HRG's amended pleading and incorporated therein by reference. Because the City's pleas to the jurisdiction challenge only the sufficiency of HRG's pleadings to invoke the trial court's jurisdiction, we consider the affidavits only as supplementing HRG's pleaded factual allegations, and not as evidence. We need not address the City's objections to them.

Governmental immunity is not unlimited. Generally, a claim falls within the scope of governmental immunity if the claimant seeks either to control government action or to subject the governmental entity to liability. *Anderson v. City of McKinney*, 236 S.W.3d 481, 482–83 (Tex. App.—Dallas 2007, no pet.). But "a governmental entity does not have immunity from suit for monetary claims against it that are 'germane to, connected with, and properly defensive to' affirmative claims made by the entity, to the extent the claims against the entity offset the entity's claims." *Albert*, 354 S.W.3d at 372 (quoting *Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 378 (Tex. 2006)). Also, "suits for injunctive relief may be maintained against governmental entities to remedy violations of the Texas Constitution." *City of Elsa v. M.A.L.*, 226 S.W.3d 390, 392 (Tex. 2007) (per curiam) (internal quotation and citation omitted).

The Declaratory Judgments Act waives immunity as to certain claims, but it is not a general waiver of immunity. *See Tex. Parks & Wildlife Dep't v. Sawyer Trust*, 354 S.W.3d 384, 388 (Tex. 2011). The Act provides that a person whose rights, status, or other legal relations are affected by a statute or ordinance "may have determined any question of construction or validity arising under" the statute or ordinance and obtain a declaration of his rights, status, or other legal relations thereunder. TEX. CIV. PRAC. & REM. CODE ANN. § 37.004(a) (West 2008). The Act further provides that a municipality must be made a party to any proceeding involving the validity of a municipal ordinance. *Id*. § 37.006(b). Accordingly, the supreme court has held that the Act waives a municipality's immunity against claims challenging the validity of its ordinances. *Albert*, 354 S.W.3d at 378; *City of El Paso v. Heinrich*, 284 S.W.3d 366, 373 n.6 (Tex. 2009).

The law has been evolving on the question of whether the Act waives governmental immunity against a claim seeking only the interpretation of a statute or a declaration of a party's statutory rights. In the past, we have said that the Act waives governmental immunity against

such claims. *See, e.g.*, *City of Seagoville v. Lytle*, 227 S.W.3d 401, 410 (Tex. App.—Dallas 2007, no pet.) ("A declaratory judgment action against the government seeking a declaration of a party's rights and status under a statute is not barred by governmental immunity."); *Bell v. City of Grand Prairie*, 221 S.W.3d 317, 324 (Tex. App.—Dallas 2007, no pet.) (same); *City of Dallas v. Martin*, 214 S.W.3d 638, 644 (Tex. App.—Dallas 2006) ("[T]here is no governmental immunity in suits to construe legislation."), *rev'd on other grounds*, 361 S.W.3d 560 (Tex. 2011). Some Texas Supreme Court cases seemed to support this interpretation of the law of immunity. *See, e.g.*, *Tex. Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 634–35 (Tex. 2010); *Tex. Natural Res. Conservation Comm'n v. IT–Davy*, 74 S.W.3d 849, 859–60 (Tex. 2002); *Tex. Educ. Agency v. Leeper*, 893 S.W.2d 432, 446 (Tex. 1994).

But our statements that governmental immunity does not bar suits to construe statutes or declare parties' statutory rights were contradicted by the supreme court in *Heinrich* and in *Texas Department of Transportation v. Sefzik*, 355 S.W.3d 618 (Tex. 2011) (per curiam). In *Heinrich*, the court held that the governmental entity retains its immunity from suit when the claimant does not challenge the validity of a statute but rather challenges a government officer's application of a statute to the claimant. 284 S.W.3d at 372–73 & n.6. The claimant's remedy is an *ultra vires* suit against the government officer in his or her official capacity for prospective relief. *Id.* at 369–74. In *Sefzik*, the court explained and amplified *Heinrich*, stating that the Declaratory Judgments Act "does not waive the state's sovereign immunity when the plaintiff seeks a declaration of his or her rights under a statute or other law." 355 S.W.3d at 621.[3] When the plaintiff's complaint is that a state official has "trampled on the plaintiff's rights," the proper defendant is the official, not the state agency itself. *Id.*

---

[3] This statement in *Sefzik* is the opposite of, and thus disapproves, our statements in *Lytle* and *Bell* that governmental immunity does not bar a suit against a governmental entity seeking a declaration of a party's rights and status under a statute. *See Lytle*, 227 S.W.3d at 410; *Bell*, 221 S.W.3d at 324.

Thus, in *City of Dallas v. Turley*, we recognized that *Heinrich* had pruned back our expansive holdings regarding the waiver of immunity found in cases like *Bell*, *Lytle*, and *Martin*. 316 S.W.3d 762, 770–71 & n.5 (Tex. App.—Dallas 2010, pet. denied). In *Kaufman County v. Combs*, we further recognized that *Sefzik* means the Declaratory Judgments Act "does not waive governmental immunity when a plaintiff seeks a declaration of rights under a statute or other law," 393 S.W.3d 336, 343 (Tex. App.—Dallas 2012, pet. denied), and we also noted that the Act's waiver "is limited to claims challenging the validity of ordinances or statutes," *id*. at 342. Finally, and most recently, we reviewed the *Leeper*, *IT–Davy*, and *First State Bank of DeQueen* opinions anew and concluded that they do not support the proposition that governmental immunity is waived whenever a party seeks an interpretation of a statute or ordinance. *City of Dallas v. Tex. EZPAWN, L.P.*, No. 05-12-01269-CV, 2013 WL 1320513, at *2–3 (Tex. App.—Dallas Apr. 1, 2013, no pet.) (mem. op.). Thus, we held that governmental immunity was not waived as to Texas EZPAWN's suit seeking an interpretation of an ordinance and a declaration that the ordinance did not apply to it. *Id*. at *3; *see also Scott-Nixon v. Tex. Higher Educ. Coordinating Bd.*, No. 03-10-00377-CV, 2012 WL 1582270, at *3 (Tex. App.—Austin May 4, 2012, no pet.) (mem. op.) ("[C]laims that seek to restrain actions that allegedly violate or exceed authority under a statute but do not challenge the validity of the statute . . . cannot be brought against the state, which retains immunity . . . .") (internal quotations omitted).

To summarize, the Declaratory Judgments Act waives governmental immunity against claims that a statute or ordinance is invalid. *Heinrich*, 284 S.W.3d at 373 n.6. The Act does not waive immunity against claims seeking a declaration of the claimant's statutory rights or an interpretation of an ordinance. *Sefzik*, 355 S.W.3d at 621 (declaration of rights); *Tex. EZPAWN*, 2013 WL 1320513, at *2–3 (interpretation of an ordinance). The Act also does not waive a governmental entity's immunity against a claim that government actors have violated the law.

*Heinrich*, 284 S.W.3d at 372–73; *Scott-Nixon*, 2012 WL 1582270, at \*3. But immunity does not bar a suit for prospective injunctive relief against government actors in their official capacity for violating the law. *Heinrich*, 284 S.W.3d at 373–77.

## B. Application of the law to HRG's live pleading

We now apply the law of governmental immunity to each of HRG's claims, dividing them into claims for declaratory, injunctive, and monetary relief.

### 1. Declaratory judgment

First, HRG seeks a declaratory judgment against the City. Specifically, HRG prays for the following declarations:

1.) the City is attempted [sic] to enforce its list of alleged violation[s] with unenforceable provisions of the Code of Ordinances, City of McKinney, Texas;

2.) the City attempted to enforce its list of alleged violations with inapplicable International Electrical, Building, Plumbing and Fire Codes;

3.) the City attempted to enforce it[s] list of alleged violations with inapplicable provisions of the International Electrical, Building, Plumbing and Fire Codes;

4.) the City failed to follow its own procedures for handling code disputes under the ICC fire code;

5.) the City entered without permission, invitation, or probable cause the property of Hank's Texas Grill;

6.) the City has stopped people leaving Hank's Texas Grill without probable cause; and,

7.) the City's conduct was egregious and inequitable.

As discussed above, the City does not enjoy immunity from declaratory-judgment claims challenging the validity of City ordinances, but the City is immune from claims seeking interpretations of City ordinances, declarations of HRG's statutory rights, and declarations that City officials have violated or are violating the law. *See Sefzik*, 355 S.W.3d at 621; *Heinrich*, 284 S.W.3d at 372–73; *Tex. EZPAWN*, 2013 WL 1320513, at \*2–3. Categories two through

–10–

seven of HRG's prayer for declaratory relief all involve claims that City officials are violating or misapplying the law in some respect. Accordingly, the City is immune from those claims unless some other waiver of immunity applies.

In its first request for declaratory relief, HRG seeks a declaration that the City is attempting to enforce "unenforceable provisions of the Code of Ordinances" against HRG. HRG does not specify which ordinances are unenforceable, nor does it specify why these ordinances are unenforceable. To avoid the bar of immunity, HRG must challenge the ordinances because they are invalid for some reason. Because HRG does not plead specifically that any City ordinances are unenforceable because they are invalid, we conclude its first request for declaratory relief does not affirmatively demonstrate that the claim is outside the scope of the City's governmental immunity. But its first claim for declaratory judgment does not affirmatively demonstrate that it is barred by immunity either. Accordingly, although the trial judge should not have denied the City's pleas to the jurisdiction as to the first request for declaratory judgment, HRG is entitled to an opportunity to amend. *See Miranda*, 133 S.W.3d at 226–27.

We next consider HRG's arguments that the City's immunity to HRG's declaratory-judgment claims has been waived under other legal theories.

### a. Waiver of immunity by inequitable conduct

HRG's main argument against the City's assertion of immunity is that the City has waived its immunity through its egregious, intentional, and inequitable course of conduct. For purposes of this argument, we assume the truth of HRG's factual allegations that the City has attempted to force the closure of Hank's Texas Grill through a campaign of harassment and intimidation of HRG, its employees, and its customers. The specific incidents alleged by HRG include two occasions on which City police officers detained HRG managers, multiple occasions

–11–

when police or fire officials stopped live-music performances without warrants to do so, and instances of police intimidation of customers by oppressive surveillance of the parking lot and by stopping customers as they were leaving the restaurant. HRG also alleges that the City has changed the occupancy load for Hank's Texas Grill several times and that the City is trying to compel HRG to fix numerous alleged code violations that are not actually violations because the code provisions are inapplicable or unenforceable.

HRG relies on dicta in two Texas Supreme Court cases to support the proposition that there is an inequitable-conduct exception to governmental immunity. *See Catalina Dev., Inc. v. Cnty. of El Paso*, 121 S.W.3d 704 (Tex. 2003); *Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401 (Tex. 1997). In each case, a claimant sued a governmental entity for breach of contract, failed to prove a legislative waiver of immunity from suit, and argued that the court should establish an equitable doctrine of waiver by conduct applicable to its contract claim. *Catalina Dev.*, 121 S.W.3d at 705–06; *Fed. Sign*, 951 S.W.2d at 403–05. In each case, the court held that there was no waiver by conduct on the facts of the case. *Catalina Dev.*, 121 S.W.3d at 706–07; *Fed. Sign*, 951 S.W.2d at 408 & n.1. In *Federal Sign*, the court left the door open to the possibility of waiver by conduct under some circumstances: "There may be other circumstances where the State may waive its immunity by conduct other than simply executing a contract so that it is not always immune from suit when it contracts." 951 S.W.2d at 408 n.1; *see also Catalina Dev.*, 121 S.W.3d at 705 (quoting footnote 1 of *Federal Sign*).

We reject HRG's waiver-by-conduct argument. First, the supreme court has never held that such a doctrine exists, and the court recently emphasized that waivers of immunity generally should be left to the legislature. *See Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 414 (Tex. 2011). Any judicial abrogation of governmental immunity should be undertaken by the supreme court. *See Leach v. Tex. Tech Univ.*, 335 S.W.3d 386, 401 (Tex. App.—Amarillo

2011, pet. denied) (stating that the existence of waiver-by-conduct doctrine "is a matter for the Supreme Court (or Texas Legislature) to resolve"). Moreover, judicial discussions of the possibility of waiver by conduct seem to have arisen only in the context of breach-of-contract claims. *See, e.g.*, *Sharyland Water Supply Corp.*, 354 S.W.3d at 414; *Catalina Dev.*, 121 S.W.3d at 705; *Fed. Sign*, 951 S.W.2d at 408 & n.1. HRG cites only one intermediate appellate decision adopting the waiver-by-conduct doctrine and applying it in favor of a claimant, and that was a breach-of-contract case. *Tex. S. Univ. v. State St. Bank & Trust Co.*, 212 S.W.3d 893, 904–08 (Tex. App.—Houston [1st Dist.] 2007, pet. denied). We find no warrant in the limited case law on the subject to apply the waiver-by-conduct doctrine to any legal theory except breach of contract. HRG has not pleaded a breach-of-contract claim in this case. Finally, HRG proposes no principles or standards to guide or constrain the application of the waiver-by-conduct doctrine, and the amorphous nature of the doctrine further weighs against its adoption.

For all these reasons, we reject HRG's contention that it has successfully pleaded a waiver of immunity by inequitable conduct.

### b. Waiver under Chapter 245 of the Texas Local Government Code

HRG also argues that its claims come within the waiver of immunity found in section 245.006 of the local government code. Chapter 245 of the code is entitled "Issuance of Local Permits," and it has been called the "Vested Rights Act." *See Md. Manor Assocs. v. City of Houston*, 816 F. Supp. 2d 394, 409 (S.D. Tex. 2011). Chapter 245 establishes a general rule that municipal regulatory agencies must consider a permit application under the terms of the ordinances, rules, and other applicable regulations that are in effect at the time the permit application is filed. *See generally* TEX. LOC. GOV'T CODE ANN. § 245.002(a) (West 2005). Certain permits and certain kinds of regulations are exempted from Chapter 245's operation. *See id*. § 245.004. Chapter 245 may be enforced only through mandamus or declaratory or injunctive

relief, and "[a] political subdivision's immunity from suit is waived in regard to an action under" Chapter 245. *Id.* § 245.006(a), (b).

Relying on section 245.006, HRG argues that the City is not immune from HRG's claims seeking declarations that the City is improperly seeking to enforce against HRG certain codes and ordinances that were not in effect when HRG applied for its permits in 2002. The first three categories of declaratory relief sought by HRG in the prayer of its live pleading potentially fit the section 245.006 waiver: (1) the City is attempting to enforce unenforceable ordinances against HRG, (2) the City is attempting to enforce inapplicable electrical, building, plumbing, and fire codes against HRG, and (3) the City is attempting to enforce inapplicable provisions of electrical, building, plumbing, and fire codes against HRG. Categories four through seven[4] clearly are not claims under Chapter 245, so section 245.006 does not waive the City's immunity as to those claims.

The City does not address Chapter 245 in its opening brief, but in its reply brief it argues that none of HRG's declaratory-judgment claims qualify for the section 245.006 waiver of immunity because all of those claims are exempted from Chapter 245 by section 245.004. The City relies specifically on the following provisions of section 245.004:

This chapter does not apply to:

(1) a permit that is at least two years old, is issued for the construction of a building or structure intended for human occupancy or habitation, and is issued under laws, ordinances, procedures, rules, or regulations adopting only:

(A) uniform building, fire, electrical, plumbing, or mechanical codes adopted by a recognized national code organization; or

(B) local amendments to those codes enacted solely to address imminent threats of destruction of property or injury to persons;

---

[4] To reiterate, these are claims for declarations (4) that the City failed to follow its own procedures for handling code disputes under the ICC fire code, (5) that the City entered Hank's Texas Grill without permission, invitation, or probable cause, (6) that the City has stopped people leaving Hank's Texas Grill without probable cause, and (7) that the City's conduct was egregious and inequitable.

(2) municipal zoning regulations that do not affect landscaping or tree preservation, open space or park dedication, property classification, lot size, lot dimensions, lot coverage, or building size or that do not change development permitted by a restrictive covenant required by a municipality;

. . .

(6) fees imposed in conjunction with development permits;

. . .

(8) regulations for utility connections;

. . . or

(11) regulations to prevent the imminent destruction of property or injury to persons if the regulations do not:

> (A) affect landscaping or tree preservation, open space or park dedication, lot size, lot dimensions, lot coverage, building size, residential or commercial density, or the timing of a project; or

> (B) change development permitted by a restrictive covenant required by a municipality.

*Id*. § 245.004.

To invoke the waiver of immunity found in section 245.006, HRG should allege facts sufficient to demonstrate that its declaratory-judgment claims come within the scope of Chapter 245, including facts sufficient to demonstrate that the exemptions found in section 245.004 do not apply to HRG's claims. *See Turley*, 316 S.W.3d at 767 ("The plaintiff bears the burden to plead facts that affirmatively demonstrate that governmental immunity has been waived . . . ."). Given the detailed exemptions found in section 245.004 and the vagueness of HRG's first three requests for declaratory relief, we conclude that HRG's pleading does not contain sufficient facts to affirmatively demonstrate the propriety of the trial court's jurisdiction under Chapter 245. But HRG's pleading also does not affirmatively demonstrate incurable defects in jurisdiction. Accordingly, HRG must be given an opportunity to replead those claims. *See Miranda*, 133 S.W.3d at 226–27.

–15–

### c. Waiver by pleading affirmative claims

HRG argues that the trial judge properly denied the City's pleas to the jurisdiction because the City waived its immunity by seeking affirmative relief. HRG relies on *Reata Construction Corp. v. City of Dallas*, 197 S.W.3d 371 (Tex. 2006). In that case, the court held that when a governmental entity sues a defendant for damages, the entity has no immunity from counterclaims that are connected to, germane to, and properly defensive to the matters on which the entity bases its claim for damages. *Id.* at 377. The entity remains immune, however, from a counterclaim for damages in excess of the amount sufficient to offset the entity's recovery, if any. *Id.* Thus, the *Reata* rule does not permit an affirmative recovery against a governmental entity; it permits only an offset against the entity's recovery, if any.

We have found no cases holding that a governmental entity's filing of affirmative claims under the Declaratory Judgments Act waives the entity's immunity from declaratory-judgment counterclaims under *Reata*. Since *Reata*, the supreme court has indicated that the *Reata* rule is limited to offsetting counterclaims for monetary relief. In *Albert*, the supreme court said, "a governmental entity does not have immunity from suit *for monetary claims against it* that are 'germane to, connected with, and properly defensive to' affirmative claims made by the entity, to the extent the claims against the entity offset the entity's claims." 354 S.W.3d at 372 (emphasis added) (quoting *Reata*, 197 S.W.3d at 378). We conclude a governmental entity's affirmative claim for declaratory relief does not have any effect on the entity's immunity from counterclaims for declaratory relief.

### d. Conclusion

The trial judge erred by denying the City's pleas to the jurisdiction with respect to HRG's claims for declaratory judgment. But because HRG may be able to plead declaratory-judgment

–16–

claims against the City that are not barred by immunity, we will remand so that the trial judge may afford HRG a reasonable opportunity to amend its pleadings.

### 2. Injunctive relief

HRG also seeks temporary and permanent injunctive relief against the City. Specifically, HRG seeks temporary and permanent injunctions prohibiting the City from the following conduct: (1) undertaking any enforcement efforts regarding the items attached to the City's August 9, 2012 letter until the City has complied with the board-of-appeals procedure set out in the fire code; (2) undertaking any enforcement efforts in connection with items described as violations in the City's August 9, 2012 letter; (3) forcing HRG to provide a fire watch if HRG is in compliance with the occupancy load set by the City on December 17, 2008; and (4) undertaking any enforcement efforts for which no demand for compliance has been made. HRG also seeks an injunction (5) ordering City police and fire personnel to stay out of HRG's property without permission, an invitation, or probable cause, and (6) ordering the City's police department to refrain from stopping anyone leaving Hank's Texas Grill without probable cause.

In the past, we have said that governmental immunity does not bar a claim that a municipality has misinterpreted the law and that includes requested injunctive relief. *Anderson*, 236 S.W.3d at 483–84. But, as explained above, the supreme court has clarified the law of government immunity in *Heinrich*. Under that case, governmental entities retain immunity from claims for injunctive relief based on allegations that government officials are violating the law or exceeding their powers under the law. *See* 284 S.W.3d at 372–73. Such claims must be brought against the responsible government actors in their official capacities. *See id*. All of HRG's claims for injunctive relief are directed to requiring City officials and employees to comply with the law. Under *Heinrich*, the City retains its immunity from HRG's claims for injunctive relief.

–17–

We have already analyzed HRG's arguments that the City's immunity from suit has been waived by the City's inequitable conduct, by Chapter 245 of the local government code, and by the City's assertion of affirmative claims for relief. The same analysis applies to HRG's claims for injunctive relief. HRG's arguments based on inequitable conduct and on the City's affirmative claims for relief are without merit. HRG's pleadings are not sufficient to establish a waiver of immunity under Chapter 245, but it is entitled to an opportunity to amend its pleadings. Accordingly, we conclude that the trial judge erred by denying the City's pleas to the jurisdiction as to HRG's claims for injunctive relief, and we will remand so that HRG may have an opportunity to replead.

### 3. Monetary relief

The City asserts that it is immune from HRG's suit "to the extent [HRG] is attempting to allege a claim for damages." This formulation highlights a threshold question, which is whether HRG is actually asserting a claim for money damages against the City at all. We conclude that HRG has pleaded a claim for money damages.

HRG's live pleading is not a model of clarity. Sections I through VII of the pleading comprise HRG's answer to the City's lawsuit. Section VIII is entitled "Factual Background to Answer, Counterclaims and Request for Injunctive Relief." After a long factual recitation making up the bulk of section VIII, HRG alleges that the City's conduct has proximately caused damages to HRG that are "in excess of the minimum jurisdictional limits of the Court but do not exceed $250,000.00." Section IX is entitled "Counterclaim," and it consists of a single paragraph requesting declaratory relief. Section X is entitled "Application for Temporary Injunction and Permanent Injunction," and although HRG devotes most of that section to describing the desired injunctive relief, section X also contains one sentence mentioning attorneys' fees: "The nature of the lawsuit will be for declaratory relief and attorney fees

–18–

incurred in response to the enforcement actions." HRG's prayer for relief does not contain a request for damages or attorneys' fees. HRG's prayer is devoted mostly to specifying the declaratory and injunctive relief desired, and it concludes with a general prayer for "such other and further relief, in law or in equity, to which [HRG] may show itself justly entitled." The trial judge apparently construed HRG's pleadings to include a request for monetary relief. In his order denying the City's pleas to the jurisdiction, the judge recited that HRG could "offset its claims for monetary relief up to an amount not exceeding the amount necessary to offset the City's monetary claims."

In its appellate brief, HRG says little about its claim, if any, for monetary damages. HRG does not mention any such claim in its statement of the facts. In its summary of the argument, HRG says only that it is entitled to mount a defense against the City's lawsuit, "a defense which can include both declaratory and injunctive relief and, [HRG] contends, monetary damages." Finally, in a heading that appears in the argument section of its brief, HRG asserts that the "Trial Court Properly Denied the City's Plea to the Jurisdiction Regarding Hank's *Alleged* Claim for Monetary Relief." (Emphasis added.) Even this heading is ambiguous—it seems to be an averment that HRG has alleged a claim for monetary relief, but it could mean only that the City alleges that HRG has made a claim for monetary relief.

Construing HRG's pleading in favor of HRG and attempting to discern HRG's intent, we conclude that HRG intended to plead a claim for damages against the City. We base our conclusion principally on paragraph 36 of section VIII of HRG's pleading, which reads, "[HRG] has been damaged. These damages proximately caused by the conduct of the City are in excess of the minimum jurisdictional limits of the Court but do not exceed $250,000.00." HRG had no reason to aver that its damages were in excess of the minimum jurisdictional limits of the trial court unless HRG intended for the court to award damages to HRG. Thus, we construe HRG's

–19–

live pleading to assert a claim for damages based on the facts alleged by HRG. We do not, however, construe HRG's pleading as including a claim for attorneys' fees. The only mention of attorneys' fees in the pleading is a statement that the "nature" of HRG's lawsuit "will be for declaratory relief and attorney fees." A statement that HRG will, in the future, make a claim for attorneys' fees is not an actual claim for attorneys' fees. HRG makes no request for attorneys' fees in its prayer for relief, and a "general prayer for relief will not support an award of attorney's fees because it is a request for affirmative relief that must be supported by the pleadings." *Alan Reuber Chevrolet, Inc. v. Grady Chevrolet, Ltd.*, 287 S.W.3d 877, 884 (Tex. App.—Dallas 2009, no pet.).

The City argues that it is immune from HRG's claim for damages (1) because HRG has pleaded no legislative waiver of immunity from suit, and (2) because the rule of *Reata Construction Corp.*, does not apply given the procedural posture of this case. As to the City's first argument, HRG argues that the City's immunity to HRG's claim for damages has been waived by the City's inequitable conduct and by Chapter 245 of the local government code. We have already rejected HRG's waiver-by-conduct argument. HRG's argument based on Chapter 245 is also unavailing. Section 245.006(a) is clear: "This chapter may be enforced only through mandamus or declaratory or injunctive relief." TEX. LOC. GOV'T CODE ANN. § 245.006(a). Thus, the Chapter 245 waiver of the City's immunity does not waive the City's immunity from a suit for damages. We agree with the City that HRG has not pleaded a legislative waiver of the City's governmental immunity to suit for damages.

We turn to the City's second argument, which addresses the *Reata* doctrine. Under *Reata*, a governmental entity is not immune from suit for monetary claims against it that are "'germane to, connected with, and properly defensive to' affirmative claims made by the entity, to the extent the claims against the entity offset the entity's claims." *Albert*, 354 S.W.3d at 372

–20–

(quoting *Reata Constr. Corp.*, 197 S.W.3d at 378). The City contends that its claims for attorneys' fees under the Declaratory Judgments Act do not qualify as "affirmative claims" under the *Reata* rule. It relies on *Texas Department of Criminal Justice v. McBride*, 317 S.W.3d 731 (Tex. 2010), and *City of Dallas v. VRC LLC*, 260 S.W.3d 60 (Tex. App.—Dallas 2008, no pet.), for support. In *McBride*, a claimant sued the TDCJ for declaratory judgment and injunctive relief, and the TDCJ answered, asserted sovereign immunity, and requested its attorneys' fees. 317 S.W.3d at 732. The supreme court held that the TDCJ's request for fees did not result in a waiver of immunity under *Reata*. *Id*. at 732–33. The court distinguished *Reata* on the basis that the TDCJ's request for fees was "purely defensive in nature, unconnected to any claim for monetary relief." *Id*. at 733. In *VRC*, we likewise held that a defendant municipality's defensive request for attorneys' fees did not waive immunity. 260 S.W.3d at 64. Thus, the City's defensive request for fees in its answer to HRG's first-filed lawsuit triggered no waiver of immunity.

But unlike the fee claims in *McBride* and *VRC*, the City's requests for fees in this case are not solely defensive. In this consolidated case, the City seeks to recover not only attorneys' fees incurred in defending HRG's suit but also its fees incurred in prosecuting its own affirmative claims against HRG. The consolidation of the two suits did not change the substance of the parties' claims; it merely merged the two suits into one. *See Perry v. Del Rio*, 53 S.W.3d 818, 825 n.6 (Tex. App.—Austin) ("When actions are properly consolidated they become merged and are thereafter treated as one suit . . . .") (internal quotations and citation omitted), *pet. dism'd*, 66 S.W.3d 239 (Tex. 2001). So the question is whether the City's claim for attorneys' fees under the Declaratory Judgments Act, asserted in its own lawsuit against HRG, constituted an affirmative claim for relief under *Reata*. We conclude that it did. In *Reata*, the court said, "Once it asserts affirmative claims for monetary recovery, the City must participate in the litigation

–21–

process as an ordinary litigant, save for the limitation that the City continues to have immunity from affirmative damages claims against it for monetary relief exceeding amounts necessary to offset the City's claims." 197 S.W.3d at 377. Here, the City's request for attorneys' fees incurred in prosecuting the City's claims against HRG constitutes an affirmative claim for monetary recovery. Accordingly, HRG may assert its own damages claims against the City defensively as an offset against the City's recovery, if any, of attorneys' fees. Of course, those damages claims must also satisfy the *Reata* criterion of being "germane to, connected with and properly defensive to" the City's claims. *Id*. But the City does not argue on appeal that HRG's claims fail to satisfy this test, so we express no opinion on this question.

For the foregoing reasons we reject the City's argument that the trial judge erred by denying the City's plea to the jurisdiction as to HRG's claim for damages up to the amount necessary to offset the City's claims.

## IV. THE CITY'S OTHER ARGUMENTS

The City raises four additional arguments attacking the trial court's subject-matter jurisdiction specifically over HRG's claims for injunctive relief. We discuss them briefly.

First, the City argues that the trial court has no jurisdiction to enjoin the City from enforcing penal ordinances because HRG has not alleged that any ordinances are unconstitutional or that enforcement of the ordinances would irreparably injure HRG's vested property rights. *See State v. Morales*, 869 S.W.2d 941, 942 (Tex. 1994) (setting forth circumstances under which civil courts have jurisdiction to enjoin enforcement of criminal statutes). We note that the City does not cite any particular ordinances in connection with this argument, nor does it demonstrate that any of the ordinances involved in this case are penal ordinances within the meaning of *Morales*. HRG's live pleading does not contain a request for an injunction against the enforcement of any particular City ordinance. Accordingly, the City

has not shown any error in the trial judge's ruling under *Morales*. In the event HRG repleads its claims for injunctive relief, the City can reassert in the trial court its argument based on *Morales*.

Next, the City argues that the trial court does not have subject-matter jurisdiction to issue an injunction that orders the continuation of a violation of law. We disagree. The authorities cited by the City do not support the proposition that an injunction ordering the continuation of an illegal act suffers from a jurisdictional defect. They hold only that such an injunction would be erroneous. *See, e.g.*, *Ahmed v. Shimi Ventures, L.P.*, 99 S.W.3d 682, 692 (Tex. App.—Houston [1st Dist.] 2003, no pet.) ("A trial court . . . abuses its discretion when it issues an injunction that orders an illegal act, even when done in the name of preserving the status quo."). We reject the City's argument.

Next, the City argues that the trial court lacks jurisdiction to enjoin the City from enforcing the alcoholic beverage code or state food-establishment regulations. HRG responds by denying that it intends to seek judicial protection against enforcement of those state laws. HRG also argues that the City's argument goes to the propriety of the injunctive relief sought, not to the trial court's jurisdiction. The City cites no authority to support the proposition that the trial court lacks jurisdiction to enjoin a municipality from enforcing state laws, and we have found none. We conclude that, although such an injunction might be erroneous and reversible, the trial court does not lack subject-matter jurisdiction to rule on a request for such an injunction.

Finally, the City argues that the trial court lacks jurisdiction to enjoin the City's police department from stopping anyone leaving Hank's Texas Grill without probable cause. The City contends that HRG lacks standing to assert such a claim. The City's entire argument consists of four sentences—three sentences setting forth abstract propositions of the law of standing, and one sentence stating the conclusion that HRG lacks standing to seek this relief. The City provides no analysis explaining how the general law of standing should apply to this case. Nor

does the City explain why HRG's assertion that the police department's conduct is harming HRG's business is not sufficient to confer standing on HRG at the pleading stage of the case. In sum, the City's briefing of this argument is inadequate, so we do not address it. *See In re Estate of Miller*, 243 S.W.3d 831, 840 (Tex. App.—Dallas 2008, no pet.) (concluding that issue was waived because appellant did not analyze legal authority and made "no suggested application of it to the facts"); *In re M.A.S.*, 233 S.W.3d 915, 924 (Tex. App.—Dallas 2007, pet. denied) ("Failure to provide substantive analysis waives an issue on appeal.").

## V. DISPOSITION

We affirm the trial judge's order denying the City's pleas to the jurisdiction to the extent the judge ruled that HRG could proceed with its claims for monetary relief in an amount not to exceed the amount necessary to offset the City's claim for attorneys' fees in connection with the City's affirmative claim for declaratory relief. We reverse the part of the trial court's order denying the City's pleas to the jurisdiction with respect to HRG's claims for declaratory judgment and injunctive relief. We render judgment dismissing HRG's claims for declaratory judgment that (1) the City failed to follow its own procedures for handling code disputes under the ICC fire code; (2) the City entered without permission, invitation, or probable cause the property of Hank's Texas Grill; (3) the City has stopped people leaving Hank's Texas Grill without probable cause; and, (4) the City's conduct was egregious and inequitable.

–24–

We remand this cause to the trial court so that the trial court may give HRG an opportunity to amend its pleadings with respect to its other claims for declaratory judgment and with respect to its claims for injunctive relief.

121359F.P05

/Kerry P. FitzGerald/
KERRY P. FITZGERALD
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

CITY OF MCKINNEY, TEXAS, Appellant

No. 05-12-01359-CV      V.

HANK'S RESTAURANT GROUP, L.P.,
Appellee

On Appeal from the 366th Judicial District
Court, Collin County, Texas
Trial Court Cause No. 366-03124-2012.
Opinion delivered by Justice FitzGerald.
Justice Lewis participating.

In accordance with this Court's opinion of this date, the trial court's Order Denying Plea to the Jurisdiction is **AFFIRMED** in part and **REVERSED** in part. We **REVERSE** that portion of the trial court's Order denying appellant City of McKinney, Texas's plea to the jurisdiction with respect to appellee Hank's Restaurant Group, L.P.'s claims for declaratory judgment and injunctive relief. We **RENDER** judgment dismissing appellee Hank's Restaurant Group, L.P.'s claims for declaratory judgment that (1) the City failed to follow its own procedures for handling code disputes under the ICC fire code; (2) the City entered without permission, invitation, or probable cause the property of Hank's Texas Grill; (3) the City has stopped people leaving Hank's Texas Grill without probable cause; and, (4) the City's conduct was egregious and inequitable. We **REMAND** this cause to the trial court so that the trial court may give appellee Hank's Restaurant Group, L.P. an opportunity to amend its pleadings with respect to its other claims for declaratory judgment and with respect to its claims for injunctive relief. We **AFFIRM** the Order with respect to appellee Hank's Restaurant Group, L.P.'s claim for damages up to an amount not exceeding the amount necessary to offset the City's monetary claims.

It is **ORDERED** that appellant City of McKinney, Texas recover its costs of this appeal from appellee Hank's Restaurant Group, L.P.

Judgment entered September 18, 2013

/Kerry P. FitzGerald/
KERRY P. FITZGERALD
JUSTICE