**AFFIRM; and Opinion Filed March 24, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-00149-CV

**LARRY M. GENTILELLO, M.D., Appellant**

**V.**

**THE UNIVERSITY OF TEXAS SOUTHWESTERN HEALTH SYSTEMS A/K/A UT SOUTHWESTERN HEALTH SYSTEMS, THE UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER MEDICAL SERVICE, RESEARCH AND DEVELOPMENT PLAN, AND THE UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER AT DALLAS, Appellees**

**On Appeal from the 14th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. 07-6167**

## MEMORANDUM OPINION
Before Justices Moseley, Lang, and Brown
Opinion by Justice Brown

Larry M. Gentilello, M.D. appeals the trial court's order granting a plea to the jurisdiction filed by the University of Texas Southwestern Health Systems a/k/a UT Southwestern Health Systems, the University of Texas Southwestern Medical Center Medical Service, Research and Development Plan, and the University of Texas Southwestern Medical Center at Dallas (collectively "UT Southwestern"), in which UT Southwestern asserted it was entitled to sovereign immunity. In four issues, Gentilello contends the trial court erred in granting the plea to the jurisdiction because UT Southwestern waived sovereign immunity under the terms of a settlement agreement and also by its conduct. We affirm the trial court's order.

**Factual and Procedural Background**

In 2003, Dr. Gentilello was employed by UT Southwestern Medical Center as the Chair of the Division of Burn, Trauma and Critical Care. At UT Southwestern, he was also a tenured professor of surgery and held the position of Distinguished C. James Carrico, M.D. Chair in Trauma. During his employment, Gentilello came to believe that UT Southwestern failed to properly supervise its residents, which resulted in certain practices Gentilello believed were contrary to Medicaid requirements and procedures. According to Gentilello, UT Southwestern knowingly and repeatedly violated the Texas Medicaid Fraud Prevention Act (TMFPA) by billing Medicaid for an attending physician's direct supervision of certain complex and/or dangerous procedures when in fact no such physician was present or a physician was only minimally involved. UT Southwestern's Billing Compliance Plan provided that, "Employees who report, in good faith, possible compliance problems shall be protected from retaliation or harassment, as established by law." Gentilello brought his concerns to Dr. Robert Rege, who was responsible for UT Southwestern's policies regarding the presence of teaching attending physicians and who oversaw internal compliance with Medicaid requirements.

Effective March 5, 2007, Gentilello was stripped of his position as the Chair of the Division of Burn, Trauma and Critical Care and of his position as the Distinguished C. James Carrico, M.D. Chair in Trauma. He also contends UT Southwestern removed him from trauma call, gave him an unsatisfactory review, docked his pay for participating in professional service activities, evicted him from his Distinguished Chair office space, and did not allow him adequate time to recover from back surgery. Gentilello maintains these adverse personnel actions were taken in retaliation for his good faith report about activities that violated Medicaid patient care requirements.

In his original petition in this case filed in 2007, Gentilello brought a *qui tam* action on behalf of the State of Texas against UT Southwestern and the Dallas County Hospital District d/b/a Parkland Health and Hospital System ("Parkland"), the primary teaching hospital for UT Southwestern, alleging violations of section 36.002 of the TMFPA. Gentilello later amended his petition to allege that after he reported UT Southwestern's Medicaid fraud, UT Southwestern retaliated against him in violation of section 36.115 of the TMFPA.[1]  *See* TEX. HUM. RES. CODE ANN. §§ 36.002, 36.115 (West Supp. 2013).

Gentilello also filed a parallel lawsuit in federal court.  There he brought a *qui tam* action on behalf of the United States government, alleging UT Southwestern and Parkland violated the False Claims Act (FCA) by filing fraudulent Medicaid claims.  Gentilello also brought an individual cause of action for retaliation under the FCA.  The federal court later ruled that Gentilello's retaliation claim under the FCA was barred by sovereign immunity under the Eleventh Amendment. *Gentilello v. Univ. of Tex. Sw. Health Sys.*, No. 3:07-CV-1172-K, 2012 WL 3638676, at *4 (N.D. Tex. Aug. 24, 2012).

In 2011, Gentilello, the United States, and the State of Texas settled the state and federal *qui tam* claims with UT Southwestern and Parkland.  Under the terms of the settlement agreement, UT Southwestern denied the allegations against it, but agreed to pay the United States and Texas $1,400,000.  The settlement agreement reserved Gentilello's right to maintain his retaliation claim under the TMFPA.

In 2012, UT Southwestern filed a plea to the jurisdiction in this case, asserting that because it is a state entity, Gentilello's remaining retaliation claim was barred by sovereign

---

[1] In addition, Gentilello filed a separate lawsuit against UT Southwestern for violations of the Texas Whistleblower Act.  That act expressly waives sovereign immunity if a public employee has properly alleged a violation of the act. *State v. Lueck*, 290 S.W.3d 876, 881 (Tex. 2009). The Texas Supreme Court ultimately dismissed Gentilello's whistleblower case for lack of jurisdiction because Gentilello could not have formed an objectively reasonable belief that the person to whom he reported the violations, Dr. Rege, possessed law enforcement powers as required by the act. *Univ. of Tex. Sw. Med. Ctr. v. Gentilello*, 398 S.W.3d 680, 689 (Tex. 2013).

immunity. Gentilello countered that UT Southwestern had waived sovereign immunity by the terms of the settlement agreement regarding the *qui tam* claims and also by its egregious conduct. The trial court held two hearings on UT Southwestern's plea to the jurisdiction. At the end of the first hearing, the trial court reserved its ruling to allow Gentilello to take the deposition of a UT Southwestern representative and thereby explore the meaning of certain language in the Billing Compliance Plan. The day before the second hearing, Gentilello amended his pleadings to include a breach of contract claim, apparently based on the Billing Compliance Plan. At the second hearing, UT Southwestern urged that the analysis in its plea to the jurisdiction regarding the retaliation claim also applied to a breach of contract claim.[2] The trial court granted UT Southwestern's plea to the jurisdiction on the basis of sovereign immunity and dismissed Gentilello's lawsuit with prejudice.[3] This appeal followed.

## Sovereign Immunity

Sovereign immunity protects the State from lawsuits for money damages. *Tex. Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 853 (Tex. 2002). Sovereign immunity encompasses two principles: immunity from *suit* and immunity from *liability*. *Id.* Immunity from suit bars a suit against the State unless the Legislature expressly consents to the suit. *Id.* It is the Legislature's sole province to waive or abrogate sovereign immunity. *Id.* at 857. Legislative consent for suit or any other sovereign immunity waiver must be by clear and unambiguous language. *Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 405 (Tex. 1997). Sovereign immunity from suit defeats a trial court's subject matter jurisdiction and thus is properly asserted

---

[2] UT Southwestern asserts in its appellate brief that the Billing Compliance Plan was not a contract between it and Gentilello. UT Southwestern contends the compliance plan was an employee handbook or manual, which does not create a binding contract, citing our opinion in *Parviz-Khyavi v. Alcon Labs., Inc.*, 395 S.W.3d 376 (Tex. App.—Dallas 2013, pet. denied). The assertion that no contract existed is a defense to Gentilello's claim. It is not a proper subject for a plea to the jurisdiction. *Taub v. Harris Cnty. Flood Control Dist.*, 76 S.W.3d 406, 409 (Tex. App.—Houston [1st Dist.] 2001, pet. denied). For purposes of this appeal, we presume the existence of a valid contract. We note that, in his reply brief, Gentilello recognizes that his "primary cause of action" is under the anti-retaliation provision of the TMFPA.

[3] Parkland filed its own plea to the jurisdiction, which the trial court also granted. Gentilello has appealed the trial court's order granting Parkland's plea to the jurisdiction in appellate cause number 05-13-00150-CV. Today, we also issue our opinion in that appeal.

–4–

in a plea to the jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225-26 (Tex. 2004). We review a trial court's ruling on a plea to the jurisdiction de novo. *IT-Davy*, 74 S.W.3d at 855.

The TMFPA expressly states that sovereign immunity has not been waived. TEX. HUM. RES. CODE ANN. § 36.116 (West 2013). Gentilello does not attempt to assert that the TMFPA or any other statute waives UT Southwestern's sovereign immunity. Instead he contends UT Southwestern waived immunity under the terms of the settlement agreement and by its conduct.

## Waiver by Settlement Agreement

We turn to Gentilello's contention, raised in his first issue, that the trial court erred in granting the plea to the jurisdiction because UT Southwestern waived sovereign immunity under the terms of the settlement agreement. Gentilello points to the following language in the agreement as a waiver of UT Southwestern's sovereign immunity:

> By entering into this Agreement, the Defendants are not waiving for purposes of any other case or controversy any defenses that may be available to them, including those under the FCA, the Eleventh Amendment to the United States Constitution, or any other statutory, common law, or equitable defense, nor is the United States or Texas waiving for purposes of any other case or controversy any claims against the Defendants that may be available to them, including those under the FCA or any other statute or common law or equitable cause of action.

Gentilello asserts that UT Southwestern reserved its defense of sovereign immunity only in any *other* case or controversy, not the instant case.

The settlement agreement does not contain clear and unambiguous language waiving sovereign immunity. *See Fed. Sign*, 951 S.W.2d at 405. The settlement agreement does not use the term "sovereign immunity" or even "immunity." Further, an argument could be made that any individual claims by Gentilello, which were not part of the settlement agreement, were "any other case or controversy." Because we conclude the language in the settlement agreement is not

a clear and unambiguous waiver of sovereign immunity in this case, we resolve Gentilello's first issue against him.

In his second issue, Gentilello contends he is not estopped from arguing that the settlement agreement waived immunity. In its plea to the jurisdiction, UT Southwestern had argued in the alternative that collateral estoppel barred Gentilello from asserting that UT Southwestern waived immunity in the settlement agreement because Gentilello made this same argument regarding his federal retaliation claim and it was rejected. *See Gentilello*, 2012 WL 3638676, at *4. Because we have reached the merits of Gentilello's first issue, we need not address his second issue.

### Waiver by Conduct

In his third issue, Gentilello contends the trial court erred in granting the plea to the jurisdiction because UT Southwestern waived immunity by its extraordinary, egregious, and inequitable conduct. Alternatively, in his fourth issue, Gentilello contends that, at a minimum, he raised a fact issue about whether UT Southwestern waived immunity through its conduct. Gentilello asserts that, by reporting UT Southwestern's conduct to Dr. Rege, he was doing what UT Southwestern asked him to do in its Billing Compliance Plan and in return he was punished. Gentilello contends the Billing Compliance Plan was established to encourage and induce UT Southwestern employees to report wrongdoing, to UT Southwestern's benefit. But then UT Southwestern denied Gentilello the protection promised by seeking sovereign immunity. Gentilello maintains that, at every turn throughout multiple lawsuits, UT Southwestern has fought to prevent Gentilello from getting any relief. As his attorney put it during oral argument, this case is Gentilello's "last stop." Gentilello asserts that, under these facts, principles of equity require a waiver of immunity.

Even if we assume that Gentilello's allegations regarding UT Southwestern's conduct are true and if we assume UT Southwestern's conduct was egregious, we are not prepared to conclude that a State entity can waive sovereign immunity by its conduct. Despite Gentilello's assertion to the contrary, Texas law does not clearly support this concept. The idea of waiver by conduct originated in the *Federal Sign* case in 1997. In that case, the Texas Supreme Court considered whether the State waives immunity from suit when it contracts with a private citizen. The court concluded that in such circumstances, the State waives immunity from *liability* only. *Fed. Sign*, 951 S.W.2d at 408. The State's act of contracting does not waive its immunity from *suit*, and thus the individual must have legislative consent to sue the State on a breach of contract claim. *Id.* In a footnote the court stated, "There may be other circumstances where the State may waive its immunity by conduct other than simply executing a contract so that it is not always immune from suit when it contracts." *Id.* at 408 n.1. Several courts of appeals have relied upon this footnote to create a judicially-imposed, equitable waiver of immunity from suit in breach of contract cases. *IT-Davy*, 74 S.W.3d at 856; *see, e.g.*, *Tex. S. Univ. v. State St. Bank*, 212 S.W.3d 893, 904-08 (Tex. App.—Houston [1st Dist.] 2007, pet. denied); *Texas S. Univ. v. Araserve Campus Dining Serv., Inc.*, 981 S.W.2d 929, 934-35 (Tex. App.—Houston [1st Dist.] 1998, pet. denied); *Alamo Comm. College Dist. v. Obayashi Corp.*, 980 S.W.2d 745, (Tex. App.—San Antonio 1998, pet. denied).

The Texas Supreme Court has itself declined to fashion such an exception to the rules regarding immunity. *See IT-Davy*, 74 S.W.3d at 857; *Gen. Svcs. Comm'n v. Little-Tex Insulation Co.*, 39 S.W.3d 591, 594-95 (Tex. 2001). As it noted in *IT-Davy*, another breach of contract case, a waiver-by-conduct exception would force the State to use its resources to litigate the waiver by conduct before it could enjoy the protection of sovereign immunity, thus defeating many of the doctrine's underlying policies. *IT-Davy*, 74 S.W.3d at 857. Further, after the

*Federal Sign* decision, the Legislature enacted a comprehensive scheme that allows contracting parties to resolve certain breach of contract claims against the State.[4] *Id.; see* TEX. GOV'T CODE ANN. §§ 2260.001-.108 (West 2008 & Supp. 2013). A year after *IT-Davy*, the supreme court again mentioned the possibility that a contracting party's conduct might waive sovereign immunity, although the equitable basis for such a waiver did not exist under the facts of that case. *See Catalina Dev., Inc. v. County of El Paso*, 121 S.W.3d 704, 705-06 (Tex. 2003). However, it has more recently rejected the invitation to recognize a waiver-by-conduct exception in a breach of contract case against a governmental entity. *See Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 414 (Tex. 2011). This Court has also recently declined to apply a waiver-by-contract doctrine in a non-breach-of-contract case. *See City of McKinney v. Hank's Rest. Group, L.P.*, 412 S.W.3d 102, 114 (Tex. App.—Dallas 2013, no pet. h.); *see also My-Tech, Inc. v. Univ. of N. Tex. Health Sci. Ctr.*, 166 S.W.3d 880, 884 (Tex. App.—Dallas 2005, pet. denied).

In summary, the Texas Supreme Court has never ruled that a doctrine of waiver of sovereign immunity by conduct exists. When it has mentioned the possibility of waiver by conduct, it has been in breach of contract cases. In its most recent opinion on the subject, it declined to create a waiver-by-conduct exception. *See Sharyland*, 354 S.W.3d at 414. Nor has this Court ever found a waiver of immunity by conduct. As we stated in *Hank's Restaurant*, "Any judicial abrogation of governmental immunity should be undertaken by the supreme court." *Hank's Rest.*, 412 S.W.3d at 114. We decline to establish a waiver-by-conduct exception to sovereign immunity for any cause of action, whether based on a breach of contract

_____

[4] This statutory scheme applies to contracts between a unit of state government and a contractor for goods or services or for certain projects. TEX. GOV'T CODE ANN. § 2260.001(1) (West 2008). The term "contractor" does not include state employees, such as Gentilello. *Id.* § 2260.001(2)(B) (West 2008).

or not. We conclude the trial court did not err in granting UT Southwestern's plea to the jurisdiction. We resolve Gentilello's third and fourth issues against him.

We affirm the trial court's order.


/Ada Brown/
ADA BROWN
JUSTICE


130149F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

LARRY M. GENTILELLO, M.D.,
Appellant

No. 05-13-00149-CV        V.

THE UNIVERSITY OF TEXAS
SOUTHWESTERN HEALTH SYSTEMS,
A/K/A UT SOUTHWESTERN HEALTH
SYSTEMS, THE UNIVERSITY OF
TEXAS SOUTHWESTERN MEDICAL
CENTER MEDICAL SERVICE,
RESEARCH AND DEVELOPMENT
PLAN, AND THE UNIVERSITY OF
TEXAS SOUTHWESTERN MEDICAL
CENTER AT DALLAS, Appellees

On Appeal from the 14th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. 07-6167.
Opinion delivered by Justice Brown.
Justices Moseley and Lang participating.

In accordance with this Court's opinion of this date, the order of the trial court is **AFFIRMED**.

It is **ORDERED** that appellees THE UNIVERSITY OF TEXAS SOUTHWESTERN HEALTH SYSTEMS A/K/A UT SOUTHWESTERN HEALTH SYSTEMS, THE UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER MEDICAL SERVICE, RESEARCH AND DEVELOPMENT PLAN, AND THE UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER AT DALLAS recover their costs of this appeal from appellant LARRY M. GENTILELLO, M.D.

Judgment entered this 24th day of March, 2014.

/Ada Brown/
ADA BROWN
JUSTICE