**AFFIRM in Part, REVERSE in Part, and REMAND; and Opinion Filed July 21, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-14-01406-CV

**CITY OF DALLAS AND LARRY HOLMES, IN HIS OFFICIAL CAPACITY AS CHIEF BUILDING OFFICIAL FOR THE CITY OF DALLAS, Appellants**
**V.**
**EAST VILLAGE ASSOCIATION, Appellee**

**On Appeal from the 162nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-14-07239**

## MEMORANDUM OPINION

Before Justices Lang-Miers, Brown and Schenck
Opinion by Justice Schenck

In this interlocutory appeal, the City of Dallas challenges the trial court's order denying its plea to the jurisdiction by which it sought dismissal of a lawsuit brought by the East Village Association (Association) challenging the validity of a City ordinance.[1] On appeal, the City argues the trial court erred by denying its plea because the City urges: (1) the Association lacks standing to challenge the ordinance; and (2) the Association failed to allege sufficient facts to invoke a waiver of the City's immunity under the Uniform Declaratory Judgments Act or to confer jurisdiction to grant injunctive relief. We affirm in part and reverse in part.

---

[1] While Larry Holmes, as the Chief Building Official for the City of Dallas, is identified as an appellant in this case, during oral argument counsel for Holmes and the City indicated that the issues presented concern only the City's plea to the jurisdiction and represented that Holmes is not requesting any relief from this Court. We therefore take no action relative to Holmes' plea below and leave that portion of the order undisturbed.

## BACKGROUND

This case concerns the City's adoption of Ordinance No. 29019 (the "Ordinance"), which changed the zoning of property located east of North Central Expressway between Haskell and Carroll Avenues ("East Village") to allow for the construction of a Sam's Club store. More specifically, the Ordinance changed the zoning to allow, among other uses, a general merchandise or food store 100,000 square feet or more ("big box" store) without a specific use permit ("SUP"). The Dallas Development Code allows a variety of retail uses in Mixed Use 3 Districts, adopted by the Ordinance, as a matter of right, but "big box" stores are only allowed with a SUP, which carries its own requirements for issuance. DAL. DEV. CODE §§51A-4.125(f)(2)(J) and 51A-4.219(a)(2)(3) and (4).[2]

Contending that they were surprised and upset by the news that a Sam's Club store was coming to their neighborhood, property owners near East Village formed the Association to challenge the sufficiency of the notice given of the proposed change in zoning and to advocate for the future land use and zoning of East Village.

## NOTICE REQUIREMENT

A municipality is required to give written notice of each public hearing before the zoning commission on a proposed change in a zoning classification. The notice is to be sent to each owner of real property within 200 feet of the property on which the change in classification is proposed. TEX. LOC. GOV'T. CODE ANN. § 211.007(c) (West 2008). The Dallas Development Code expands this notice requirement to owners of real property within 500 feet when the zoning

---

[2] In particular, an applicant for a SUP must comply with all zoning amendment procedures for a change in zoning classification. *Id.* §51A-4.219(a) (4). The City must issue a separate ordinance for each SUP granted and City Council is not to grant a SUP for a use except upon a finding that the use will: (1) complement or be compatible with the surrounding uses and community facilities; (2) contribute to, enhance, or promote the welfare of the area of request and adjacent properties; (3) not be detrimental to the public health, safety, or general welfare; and (4) conform in all other respects to all zoning regulations and standards. *Id.* §§51A-4.219(a)(2) and(3).

change is for a Planned Development, which is the case here. DAL. DEV. CODE §§ 51A-4.701(b)(5) and 51A-1.105(a)(4).

The requisite details of the notice of hearing are not specified by statute. The general rule is that the notice is sufficient if it reasonably apprises those for whom it was intended of the nature of the pending proposal to the extent that they can determine whether they should be present at the hearing. *Midway Protective League v. City of Dallas*, 552 S.W.2d 170, 175 (Tex. Civ. App.—Texarkana 1977, writ ref'd n.r.e.). While the notice need not be complete and perfect in every respect, it must be of such a character to afford the recipient an opportunity to oppose the measure if he desires. *Id. See also, e.g. Dacus v. Parker*, No. 13-0047, 2015 WL 3653295, at *6 (Tex. June 12, 2015) (notice should be definite and certain so as not to mislead the recipient).

**NOTICES GIVEN**

The City gave the following written notices of hearing to owners of property within 500 feet of East Village prior to adopting the Ordinance.

The Dallas City Plan Commission ("Planning Commission"), on May 2, 2013, and City Council, on May 22, 2013, will consider:

> An application for 1) a Planned Development District for MU-3 Mixed Use District uses on property zoned a GO(A) General Office District, an MU-3 (SAH) Mixed Use District (Affordable) and a portion of Subdistrict E in PDD No. 305, Cityplace, on the northeast corner of North Central Expressway and North Carroll Avenue and for 2) a new subdistrict within Planned Development District No. 305 on property zoned Subdistrict E within the PDD on the northeast corner of North Central Expressway and North Haskell Avenue.

> A Planned Development District is proposed on a ± 16.158-acre portion of the request site to accommodate a retail development with design standards. A new subdistrict within PDD No. 305 is proposed on a ± 10.595-acre portion of the request site to create a 'data center' use and associated parking ratio. This will allow existing office buildings to be utilized for that purpose.

None of the property owners entitled to notice appeared at the hearings. The Planning Commission voted to recommend approval of the new planned development with the removal of

–3–

the condition that the owner obtain a SUP for the construction of a "big box" store. The City Council, upon the recommendation of the Planning Commission, approved the requested change in zoning and adopted the Ordinance authorizing uses permitted in MU-3 Mixed Use Districts as well as a "big box" store.

## THE LAWSUIT

The Association filed suit against the City and others seeking a declaration that the Ordinance is void for failure to give residents notice of the waiver of the SUP requirement for a "big box" store and seeking to enjoin the City and others from taking ministerial actions in connection with development of East Village in accordance with the revised plan.

The City filed a plea to the jurisdiction contesting the trial court's subject matter jurisdiction. The trial court denied the plea and this interlocutory appeal followed. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8) (West 2015) (authorizing interlocutory appeal from order denying a plea to the jurisdiction by a governmental unit).

### STANDARD OF REVIEW

Whether subject matter jurisdiction exists is a question of law that can be challenged, as it was here, by a plea to the jurisdiction. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). We review an order denying a plea to the jurisdiction *de novo. See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004).

A plea to the jurisdiction can challenge the sufficiency of the claimant's pleadings or the existence of necessary jurisdictional facts. *See Miranda*, 133 S.W.3d at 226–28. Here, the City challenges both. When the plea challenges the claimant's pleadings, we determine whether the claimant has plead facts that affirmatively demonstrate the trial court's jurisdiction, construing the pleadings liberally and in favor of the claimant. *Id.* at 226. When the plea challenges jurisdictional facts, we consider evidence submitted by the parties. *Id.* at 227. In performing our

review, we do not look to the merits of the claimant's case, but consider only the pleadings and the evidence pertinent to the jurisdictional inquiry. *Id.* If the jurisdictional evidence creates a fact question, then the trial court cannot grant the plea to the jurisdiction, and the issue must be resolved by the fact finder. *Id.* at 227–28. This standard mirrors our review of summary judgments, and we therefore take as true all evidence favorable to the Association, indulging every reasonable inference and resolving any doubts in its favor. *Id.* at 228.

## DISCUSSION

### STANDING

In its first issue, the City claims the Association does not have standing to bring claims for declaratory and injunctive relief. Standing is a necessary component of a court's subject matter jurisdiction. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993). When standing has been statutorily conferred, the statute itself serves as the proper framework for a standing analysis, rather than common-law rules. *Hunt v. Bass*, 664 S.W.3d 323, 324 (Tex. 1984); *Everitt v. TK-Taito, LLC*, 178 S.W.3d 844, 851 (Tex. App.—Fort Worth 2005, no pet.).

The Association claims standing to bring this suit under the Texas Uniform Unincorporated Association Act, codified in chapter 252 of the Texas Business Organizations Code (the "Code"). The City challenges the Association's status as a nonprofit association claiming it does not have a "nonprofit purpose" recognized by the Code, and thus cannot rely upon the Code for standing. We disagree with the City.

The Code defines a "nonprofit association" as an unincorporated organization, other than one created by a trust, consisting of three or more members joined by mutual consent for a common, nonprofit purpose. TEX. BUS. ORGS. CODE ANN. § 252.001(2) (West 2012). A nonprofit purpose is in turn defined broadly to include: serving charitable, benevolent, religious, eleemosynary, patriotic, civic, missionary, educational, scientific, social, fraternal, athletic, aesthetic, agricultural, and horticultural purposes; operating or managing a professional,

commercial, or trade association or labor union; providing animal husbandry; or operating on a nonprofit cooperative basis for the benefit of its members. *Id.* at § 2.002.

The pleadings and the relevant documents and testimony presented to the trial court establish the Association's purposes are "advancing the interest of East Village Residents, specifically including but not limited to advocacy on East Village land use and zoning issues for the benefit of East Village Residents" and the betterment of the neighborhood. Protecting the quality of neighborhood living is a civic purpose. *See e.g. Hill Country Estates Homeowners Ass'n v. Guernsey*, No. 13–13–00395–CV, 2015 WL 2160510, at *2 (Tex. App.—Corpus Christi May 7, 2015, no pet.); *Anderson v. New Prop. Owners' Ass'n of Newport, Inc.,* 122 S.W.3d 378, 385 (Tex. App.—Texarkana 2003, pet. denied). Therefore, the Association has a nonprofit purpose and is a nonprofit association to which the Code applies.

Next, citing section 252.006 of the Code, entitled "Liability in Tort and Contract," the City contends that the Association does not have standing to seek declaratory and injunctive relief to prevent the City from taking certain actions because the Code only provides that an association is a legal entity for the purposes of determining and enforcing rights, duties and liabilities in contract and tort, claims that are not involved in this lawsuit. The City's reliance on section 252.006 is misplaced. Section 252.006 protects members of associations from individual liability for actions of the associations that sound in contract or tort. Section 252.006 does not purport to address, much less to confer or restrict the standing of an association.

Instead, section 252.007 of the Code, entitled "Capacity to Assert Defend; Standing," is the provision that confers standing on associations. An association may assert a claim in its name on behalf of its members if:

> (1)    one or more of the nonprofit association's members have standing to assert a claim in their own right;

(2)      the interests the nonprofit association seeks to protect are germane to its purposes; and

(3)      neither the claim asserted nor the relief requested requires the participation of a member.

TEX. BUS. ORGS. CODE ANN. § 252.007(b).

The City does not challenge the Association's ability to satisfy the second and third prongs of the statute's associational standing test. Focusing on the first prong, the City argues the Association does not have standing because it does not own property within 200 feet of East Village. We have previously considered and rejected this argument in *Wyly v. Preservation Dallas*, 165 S.W.3d 460, 463 (Tex. App.—Dallas 2005, no pet.).[3] The Association does not have to own property itself to challenge the notice given. What is required is that one or more of its members own property within the notice area and would have standing to assert a claim.

The Association alleged that one or more of its members reside and own real property within 200 feet of East Village and have particularized injury standing to challenge the validity of the Ordinance because they claim the value of their property will be suppressed and the development will cause a traffic nuisance. The Association also presented evidence that two of the Association's members have owned real property within 200 feet of East Village for more than 45 years and that the rezoning will adversely impact them, as well as others, who own property near East Village.

The City argues these jurisdictional facts and pleadings do not satisfy the first prong of the test because one of the two members identified by the Association putatively waived standing by returning a reply form supporting the zoning change without noting an objection to the

---

[3] The City cites *Kinkaid Sch., Inc. v. McCarthy*, 833 S.W.2d 226 (Tex.App.—Houston [1st Dist.] 1992, no pet.) a case that was decided before the Texas Supreme Court adopted the associational standing test set forth in *Hunt*, and before the legislature adopted the Uniform Unincorporated Nonprofit Association Act at issue here. In all events, the *Kinkaid* court did not consider or apply any associational standing test.

noticed proposal. Of course, only one member with standing is required.[4] Moreover, the one member who expressed no opposition prior to the City's approval, appeared below to make clear that he objected to the plan as approved and to complain that he had not received notice adequate to describe it. As detailed below, this opposition, at least, creates a fact issue insofar as this member's standing is concerned. *Miranda*, 133 S.W.3d at 227-28. We therefore conclude the Association demonstrated that at least one of its members could sue in their own right. This satisfies the first prong of the test.

We overrule the City's first issue.

## WAIVER OF GOVERNMENTAL IMMUNITY

In its second issue, the City claims the Association failed to allege the existence of facts sufficient to invoke a waiver of the City's immunity under the Uniform Declaratory Judgments Act ("Declaratory Judgments Act"). The Declaratory Judgments Act expressly waives governmental immunity in any proceeding that involves the validity of a municipal ordinance. TEX. CIV. PRAC. & REM. CODE § 37.006(b). In such a case, the municipality must be made a party and is entitled to be heard. *Id.*

Relying upon the merit inquiry the *Miranda* court conducted to determine whether governmental immunity had been waived under the Texas Tort Claim Act, the City reads into the waiver of immunity under the Declaratory Judgments Act a requirement that the party challenging the ordinance first establish the ordinance is in fact invalid. The City then claims the Association cannot establish the Ordinance is invalid because the notice given was sufficient as a matter of law. The City's reliance upon *Miranda* is misplaced because *Miranda's* merits inquiry is a product of a statutory regime that makes the jurisdictional waiver co-extensive with liability.

[4] While the argument on standing focuses on owners of property within 200 feet of East Village, the Dallas Development Code requires the City to give written notice of the proposed zoning change to owners of property within 500 feet of East Village. We presume the City agrees that it has to comply with its own development code and that owners of property within 500 feet of East Village would have standing to challenge the Ordinance.

–8–

Jurisdiction in this case does not depend upon a merit determination of the sufficiency of the notice given. And even if the City established that the notice given was sufficient as a matter of law, which it has not, such a showing would not affect the waiver of governmental immunity under the Declaratory Judgments Act.

As previously stated, *Miranda* concerned a waiver of governmental immunity under the Texas Tort Claim Act, not the Declaratory Judgments Act. 133 S.W.3d at 224. The Texas Tort Claims Act waives immunity from suit but only "to the extent of liability created by [the Act]." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.025(a). The Texas Tort Claim Act expressly waives sovereign immunity in three areas: "use of publicly owned automobiles, premises defects, and injuries arising out of conditions or use of property." *Miranda*, 133 S.W.3d at 224. The Texas Tort Claim Act further modifies a governmental unit's waiver of immunity from suit by imposing the limitations of liability articulated in the recreational use statute. TEX. CIV. PRAC. & REM. CODE ANN. § 101.058. A governmental unit waives sovereign immunity under the recreational use statute only if it is grossly negligent. *Id.* at § 75.002(c)-(d). Considering the interplay between the Texas Tort Claims Act and the recreational use statute, a governmental unit retains immunity from suit absent evidence of circumstances giving rise to a duty to warn or protect coupled with the requisite mental state. *See Suarez v. City of Tex. City*, No. 13-0947, 2015 WL 3802865, at *6 (Tex. June 19, 2015). Thus, the immunity waiver under the Texas Tort Claim Act is intertwined with the merits of a claim under that act. *Id.* at *5.

Unlike the Texas Tort Claim Act, the immunity waiver under the Declaratory Judgments Act is not intertwined with the merits of a claim under that act. Immunity is waived if the proceeding involves the validity of a municipal ordinance. The waiver is not conditioned upon evidence that the challenged ordinance is in fact invalid. For jurisdictional purposes, what is required is a pleading that would support the invalidation of the ordinance. *See e.g. City of*

–9–

*McKinney v. Hank's Rest. Grp., LP*, 412 S.W.3d 102, 113 (Tex. App.—Dallas 2013, no pet.). Here, the Association averred that the Ordinance is void for lack of sufficient notice. If a notice of a zoning change does not sufficiently apprise its recipients of the nature of the proposed new zoning, the ordinance is void. *See City of Amarillo v. Wagner*, 326 S.W.2d 863, 864 (Tex. Civ. App.—Amarillo 1959, writ ref'd n.r.e.). Because lack of sufficient notice is a basis upon which the Ordinance would be void, the Association has pleaded a claim under the Declaratory Judgments Act for which governmental immunity has been waived.

Citing *Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 510 (Tex. 1993) and *Mickens v. Longhorn DFW Moving, Inc.*, 264 S.W.3d 875, 878 (Tex. App.—Dallas 2008, pet. denied), the City claims compliance with notice requirements is a question of law to be determined by the court. The *Dresser* and *Mickens* cases are not on point for two reasons. First, the decisions concerning the sufficiency of the notices in *Dresser* and *Mickens* were not examined as jurisdictional issues. They were made on the merits and at trial. As noted above, we do not read *Miranda* and section 37.006(b) as conditioning jurisdiction on a plenary examination of the merits. In addition, *Dresser* and *Mickens* concerned the fair notice requirement of conspicuousness, as defined by the Texas Uniform Commercial Code, applicable to indemnity and release agreements in contracts involving the sale of goods or services between private parties, not a notice of a zoning change request in connection with a statutory scheme conferring jurisdiction to examine the validity of an ordinance. *Dresser*, 835 S.W.2d at 510-11; *Mickens*, 264 S.W.3d at 879.

Once again concentrating on the merits of the Association's claim, the City claims this case is like the *Midway* case and urges us to find that the notices given were sufficient as a matter of law. We disagree for two reasons. As stated previously, in performing our review of the trial court's interlocutory denial of the City's plea to the jurisdiction, we do not look to the

–10–

merits of the Association's case and determine whether the notice given was sufficient. In addition, the *Midway* case establishes the sufficiency of the notice is a question of fact to be reached in the trial court in the first instance and not by us on accelerated interlocutory appeal.

In *Midway*, an unincorporated association of real property owners residing in a neighborhood of a zoning change sued the city attacking the validity of a city ordinance rezoning property for use as a "dry" shopping center. The association claimed lack of proper notice that the center would be dry. The city did not challenge the trial court's jurisdiction. The trial court, as the trier of fact at trial, decided that the notice was sufficient. The appellate court affirmed the trial court's decision. *Midway,* 552 S.W.2d at 175.

Under *Midway*, when an ordinance is challenged for lack of sufficient notice as to the scope of the change in zoning, the issue of sufficiency is not a jurisdictional question, but rather a question as to the merits of the claim to be determined by the trier of fact on a case by case basis. The *Midway* case does not support a determination of the sufficiency of the notice to resolve a jurisdictional challenge.

Because the City purported to challenge the jurisdictional facts to support a claim under the Declaratory Judgments Act, the Association presented the testimony of David Shaw, a member of the Association who owns property within 200 feet of East Village. He testified he did not know the City was considering allowing the construction of a "big box" store and had he known this he would have appeared at the hearings and opposed the zoning change.

The City objected to this testimony on various grounds, including relevancy, despite urging a determination of the sufficiency of the notice on the merits. On appeal, the City claims the trial court erred in overruling its objections to Shaw's testimony. The decision of whether to admit or exclude testimony is committed to the sound discretion of the trial court. *Lopez v. La Madeleine of Tex., Inc.,* 200 S.W.3d 854, 859–60 (Tex. App.—Dallas 2006, no pet.). A trial

court abuses its discretion in admitting testimony or evidence if it acts without reference to any guiding rules or principles or if the act complained of is arbitrary and unreasonable. *Carpenter v. Cimarron Hydrocarbons Corp.*, 98 S.W.3d 682, 687 (Tex. 2002). In light of the record before this court, and the lack of any authority from the City to establish the trial court abused its discretion, we overrule the City's complaint concerning the evidentiary rulings.

Shaw's testimony, as well as the City's plea itself, which goes into fact intensive analysis of the notices, establishes that a fact question exists on the notice issue. Because the Association asserted a claim under the Declaratory Judgments Act for which governmental immunity has been waived and presented evidence in response to the City's plea challenging jurisdictional facts that raises a fact issue on the sufficiency of the notice, the trial court properly denied the City's plea to the jurisdiction on the Association's declaratory judgment claim. We overrule the City's second issue.

In its third issue, the City claims the Association failed to allege and establish the existence of sufficient facts to invoke a waiver of the City's immunity to maintain an action for injunctive relief.

In connection with the Association's request for a permanent injunction, the Association alleged that any further conduct predicated on the validity of the Ordinance would be *ultra vires.* The Association seeks to enjoin the City and its officials, including its Chief Building Official, from issuing a building permit for a general merchandise or food store 100,000 square feet or more on East Village; from issuing a certificate of occupancy for any building that does not comply with the pre-Ordinance zoning on East Village, and from issuing any permits or certificates on East Village for uses that do not comply with the pre-Ordinance zoning. The Association further seeks an order mandating that any such permits already issued be cancelled

–12–

by the City, and prohibiting the construction and use of any building as a general merchandise or food store 100,000 square feet or more on East Village.

The Texas Supreme Court has clarified the law of government immunity from claims for injunctive relief in *City of El Paso v. Heinrich*, 284 S.W.3d 366 (Tex. 2009). Under that case, governmental entities retain immunity from claims for injunctive relief based on allegations that government officials are violating the law or exceeding their powers under the law. *Id.* at 372-73. Such claims must be brought against the responsible government actors in their official capacities. *See id.*

The Association seeks injunctive relief for *ultra vires* conduct predicated on a void ordinance. Under *Heinrich*, the City retains its immunity from the Association's claims for injunctive relief while City officials, in their official capacity, do not. Therefore, the Association has not plead facts that demonstrate a waiver of governmental immunity to assert its injunction claim against the City. We sustain the City's third issue.

## CONCLUSION

We affirm the trial court's order denying the City's plea to the jurisdiction as to the Association's standing and ability to bring a declaratory judgment action challenging the validity of the Ordinance. We reverse the trial court's order denying the City's plea to the jurisdiction as to the Association's permanent injunction claim. We remand the cause for further proceedings consistent with this opinion.

.

/David J. Schenck/
DAVID J. SCHENCK
JUSTICE

141406F.P05

–13–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

CITY OF DALLAS, Appellant

No. 05-14-01406-CV          V.

EAST VILLAGE ASSOCIATION, Appellee

On Appeal from the 162nd Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-14-07239.
Opinion delivered by Justice Schenck.
Justices Lang-Miers and Brown
participating.


In accordance with this Court's opinion of this date, the order of the trial court on the City of Dallas' Plea to the jurisdiction is **AFFIRMED** in part and **REVERSED** in part. We **REVERSE** that portion of the trial court's order as to East Village Association's permanent injunction claim against the City of Dallas. In all other respects, the trial court's order is **AFFIRMED**. We **REMAND** this cause to the trial court .

It is **ORDERED** that appellee EAST VILLAGE ASSOCIATION recover  costs of this appeal from appellant CITY OF DALLAS.


Judgment entered this 21st day of July, 2015.

–14–