FILED
*October 5, 2016*
Third Court of Appeals
Jeffrey D. Kyle
Clerk

ACCEPTED
03-16-00415-CV
11714778
THIRD COURT OF APPEALS
AUSTIN, TEXAS
7/19/2016 3:40:55 PM
JEFFREY D. KYLE
CLERK

NO. 03-16-00415-CV

---

**In the Court of Appeals
For the Third District of Texas**

RECEIVED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
7/19/2016 3:40:55 PM
~~JEFFREY D. KYLE~~
Clerk

---

**MCLANE COMPANY, INC.,**
*Intervening Plaintiff-Appellant,*

v.

**TEXAS ALCOHOLIC BEVERAGE COMMISSION ET AL.,**
*Defendants-Appellees.*

---

**On Accelerated Appeal from the
53rd Judicial District Court of Travis County, Texas
Cause No. D-1-GN-15-004380**

---

**MCLANE COMPANY, INC.'S OPENING BRIEF
ORAL ARGUMENT REQUESTED**

---

BRETT CHARHON
  Texas State Bar No. 24040674
  bcharhon@ccrglaw.com
STEVEN CALLAHAN
  Texas State Bar No. 24053122
  scallahan@ccrglaw.com
**CHARHON CALLAHAN
ROBSON & GARZA, PLLC**
3333 Lee Parkway, Suite 460
Dallas, Texas 75219
Telephone: (214) 521-6400
Telecopier: (214) 764-8392

*Counsel for Intervening Plaintiff-
Appellant McLane Company, Inc.*

Dated: July 19, 2016

## IDENTITY OF PARTIES AND COUNSEL

The **Texas Alcoholic Beverage Commission** ("TABC") is the original plaintiff in the case. The TABC became a defendant after McLane intervened. **Sherry Cook**, the Chief Administrative Officer and Officer for Public Information of the TABC, is also a defendant. The TABC and Ms. Cook are represented by:

> Ann Hartley
> Financial Litigation & Charitable Trusts Division
> Office of the Attorney General
> P.O. Box 12548
> Austin, Texas 78711-2548

**Ken Paxton**, Attorney General of Texas, is the original defendant in the case. Mr. Paxton is not a party to this appeal. Mr. Paxton is represented by:

> Matthew Ryan Entsminger
> Open Records Litigation
> Administrative Law Division
> Office of the Attorney General
> P.O. Box 12548
> Austin, Texas 78711-2548

**McLane Company, Inc.** ("McLane") is the intervening plaintiff in the case. McLane is represented by:

> Brett Charhon
> Steven Callahan
> Charhon Callahan Robson & Garza, PLLC
> 3333 Lee Parkway, Suite 460
> Dallas, Texas 75219

i

# TABLE OF CONTENTS

STATEMENT OF THE CASE ...................................................................v

STATEMENT REGARDING ORAL ARGUMENT ......................................vi

ISSUES PRESENTED...........................................................................vii

PRELIMINARY STATEMENT ................................................................1

STATEMENT OF FACTS.......................................................................3

SUMMARY OF THE ARGUMENT ...........................................................6

ARGUMENT........................................................................................6

    A.    Standard of Review: De Novo........................................................6

    B.    The UDJA Waives Sovereign Immunity for Claims to Construe Texas Statutes ............................................................7

    C.    The Court Should Exercise Jurisdiction Over McLane's Ultra Vires Claim Against Ms. Cook........................18

        1.    Under *Heinrich*, the Court Should Exercise Jurisdiction Over McLane's Claim that Ms. Cook Violated Non-Discretionary Statutory Duties........................................................................19

        2.    Under *Houston Belt*, the Court Should Exercise Jurisdiction over McLane's Claim that Ms. Cook Exceeded Any Statutory Discretion...........................................................................26

        3.    In the Alternative, the Court Should Find that the District Court Erred in Failing to Grant McLane Leave to Replead its Ultra Vires Claim Against Ms. Cook................................................29

PRAYER ..........................................................................................30

# INDEX OF AUTHORITIES

**Page(s)**

**CASES**

*Abbott v. G.G.E*,
463 S.W.3d 633 (Tex. App.—Austin 2015, pet. filed) ...................................... 6

*City of Austin v. Cherry*,
03-14-00212-CV, 2015 WL 4508819
(Tex. App.—Austin July 21, 2015, no pet.)...................................................... 30

*City of Dallas v. Dequire*,
249 S.W. 3d 428 (Tex. 2008) ........................................................................9, 10

*City of Dallas v. Saucedo-Falls*,
218 S.W.3d 79 (Tex. 2007) ...........................................................................9, 10

*City of El Paso v. Heinrich*,
284 S.W.3d 366 (Tex. 2009) ........................................................................passim

*City of McKinney v. Hank's Rest. Grp.*,
412 S.W.3d 102 (Tex. App.—Dallas 2013, no pet.) ........................................ 16

*Helena Chem. Co. v. Wilkins*,
47 S.W.3d 486 (Tex. 2001) ............................................................................. 22

*Houston Belt & Terminal Ry. Co. v. City of Houston*,
487 S.W.3d 154 (Tex. 2016) .......................................................................passim

*Patel v. Tex. Dept. of Licensing & Regulation*,
469 S.W.3d 69 (Tex. 2015) ..........................................................................14, 16

*Pharmserv, Inc. v. Tex. Health & Human Servs. Comm'n*,
No. 03-13-00526-CV, 2015 WL 1612006
(Tex. App.—Austin Apr. 9, 2015, no pet.) ...................................................... 15

*Star Houston, Inc. v. Tex. Dep't of Transp.*,
957 S.W.2d 102 (Tex. App.—Austin 1997, pet. denied) ................................ 15

*Tex. Education Agency v. Leeper*,
893 S.W.2d 432 (1994) ................................................................................passim

*Tex. Dept. of Parks & Wildlife v. Miranda*,
133 S.W.3d 217 (Tex. 2004) ................................................................. 6

*Tex. Lottery Comm'n v. First State Bank of DeQueen*,
325 S.W.3d 628 (Tex. 2010) ..........................................................passim

*Tex. Mun. Power Agency v. Pub. Util. Com'n*,
100 S.W.3d 510 (Tex. App.—Austin 2003, pet. denied) ............................15, 18

*Tex. Mun. Power Agency v. Pub. Util. Com'n*,
253 S.W.3d 184 (Tex. 2008) ............................................................. 18

*Tex. Nat. Res. Cons. Comm'n v. IT-Davy*,
74 S.W.3d 849 (Tex. 2002) ................................................................. 9

*Tex. State Bd. of Vet. Med. Examiners v. Giggleman*,
408 S.W.3d 696 (Tex. App.—Austin 2013, no pet.)........................................ 15

*Tex. Dep't of Transp. v. Sefzik*,
355 S.W.3d 618 (Tex. 2011) ..........................................................passim

**STATUTES**

Tex. Civ. Prac. & Rem. Code § 37.004 ....................................7, 8, 9, 10

Tex. Civ. Prac. & Rem. Code § 37.006 ........................................10, 11

Tex. Gov't Code § 552.001 ............................................................ 22

Tex. Gov't Code § 552.022 ............................................................ 20

Tex. Gov't Code § 552.025 ............................................................ 20

Tex. Gov't Code § 552.203 ........................................................21, 25

Tex. Gov't Code § 552.204 ............................................................ 22

Tex. Gov't Code § 552.221 ........................................................23, 24

Tex. Gov't Code § 552.227 ............................................................ 24

Tex. Gov't Code § 552.221 ..........................................................passim

Tex. Gov't Code § 2001.051 .......................................................... 13

**STATEMENT OF THE CASE**

This case addresses the TABC and Ms. Cook's duties under the Public Information Act ("PIA"). McLane brought (i) a declaratory-judgment claim against the TABC to construe the PIA, (ii) a declaratory-judgment, ultra vires claim against Ms. Cook (the TABC's Officer for Public Information) in her official capacity to require her to comply with the PIA, and (iii) a mandamus claim under the PIA against the TABC. The Court dismissed both declaratory-judgment claims for lack of jurisdiction. Appendix, Exs. 1-2 (CR214-15). The mandamus claim remains, although it is presently stayed at the district court pending the resolution of this accelerated appeal.

## STATEMENT REGARDING ORAL ARGUMENT

McLane requests oral argument. The sovereign-immunity issues implicate a number of Texas Supreme Court and appellate decisions. Further, the ultra vires claim implicates a recent Texas Supreme Court decision, *Houston Belt & Terminal Ry. Co. v. City of Houston*, 487 S.W.3d 154 (Tex. 2016). McLane seeks the opportunity to answer any questions the Court may have about these decisions, and submits that oral argument will assist the Court resolve this appeal.

# ISSUES PRESENTED

This interlocutory appeal presents the following issues:

1. Whether the Texas Uniform Declaratory Judgments Act ("UDJA") waives sovereign immunity for claims seeking construction of a Texas statute; and

2. Whether subject matter jurisdiction exists over an ultra vires claim against the TABC's Officer for Public Information where the PIA imposes mandatory obligations on her and McLane asserts that she failed to comply with such obligations.

# PRELIMINARY STATEMENT

The instant lawsuit arises from a single public-information request submitted by McLane to the TABC in May 2015. The PIA imposes several mandatory, non-discretionary obligations on the TABC and Ms. Cook when responding to PIA requests—for example, under the PIA, they must promptly search for and produce all responsive, non-excepted public information. *See* Tex. Gov't Code §§ 552.221 ("prompt" production); 552.227 (exception to scope of search); 552.022-552.156 (defining public information and exceptions). McLane alleges that the TABC, through Ms. Cook, has not complied with the PIA in four ways: (i) Ms. Cook has not acted promptly (indeed, over a year later, the TABC admits that it still has not finished responding to the May 2015 request), (ii) Ms. Cook did not perform an adequate search for responsive public information, (iii) Ms. Cook has not produced all responsive, non-excepted public information, and (iv) Ms. Cook failed to set a date within a reasonable time when the requested information would be available to McLane.

Fundamentally, McLane and the TABC disagree about the duties imposed by the PIA in two important ways. First, the TABC contends that the PIA provides it absolute discretion to determine when to complete its production of public information. In contrast, McLane contends that the plain text of

the statute requires the TABC to act "promptly [and] without delay," *see* § 552.221(a), and does not allow the TABC to unilaterally postpone or delay production of public information.

Second, the TABC contends that it has discretion to limit the scope of its search for responsive documents. McLane, on the other hand, contends that the TABC must engage in a comprehensive search designed to capture all public information that is not excepted from disclosure under the PIA. If the TABC could arbitrarily restrict its search, the TABC would create *de facto* categories of documents excepted from disclosure not within the contemplation of the PIA itself (e.g., if TABC refused to search its archives, the TABC would create a *de facto* exception for archived files). Thus, McLane contends that the PIA requires a comprehensive search that uncovers all responsive public information.

McLane seeks to resolve these fundamental disputes regarding the parties' competing interpretations of the PIA through McLane's UDJA and ultra vires claims. The UDJA waives sovereign immunity over actions to *construe* statutes. *See Tex. Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 634-35 (Tex. 2010). Under *DeQueen* and the plain language of the UDJA, the Court should find that Texas has waived sovereign immunity over declaratory-judgment claims seeking to construe a statute.

2

McLane also brought an ultra vires claim to require Ms. Cook to comply with the PIA. The PIA does not provide Ms. Cook with discretion to determine whether or when to comply with public-information requests. Instead, as required by the PIA, Ms. Cook must promptly perform a reasonable search for all responsive public information. Because McLane claims that Ms. Cook failed to comply with non-discretionary duties imposed by the PIA, the Court should find jurisdiction over McLane's ultra vires claim.

Even if the Court finds that Ms. Cook enjoys some discretion under the PIA, the Court should nevertheless find jurisdiction over McLane's ultra vires claim. McLane asserts that Ms. Cook acted outside of any discretion provided under the PIA by (i) delaying her search and production of responsive public documents for over a year, (ii) failing to engage in a comprehensive search for responsive public documents, (iii) withholding public documents subject to mandatory disclosure, and (iv) failing to properly certify a reasonable date for production of the requested documents. Under *Houston Belt & Terminal Railway Co. v. City of Houston*, McLane's allegations support jurisdiction over this claim. 487 S.W.3d 154 (Tex. 2016).

## STATEMENT OF FACTS

On May 22, 2015, McLane requested information from the TABC under the PIA. CR107-08 (McLane's May 22, 2015 PIA request). McLane

3

sought two categories of information: (i) documents relating to any communications involving Ms. Cook (TABC's Executive Director) or Ed Swedberg (TABC's Deputy Executive Director) from March 31, 2015, to May 22, 2015; and (ii) documents relating to the TABC or its employees and the Employee Retirement System of Texas Pension Plan from January 1, 2012, to December 31, 2014. *See id.* Even though the public-information request has been pending since May 2015, the TABC admits that it still has not finished its production of all information responsive to the request. *See* CR187 (TABC's May 3, 2016 letter promising further production by August 2016).

In July 2015, the TABC asked the Attorney General for an opinion on whether the TABC could withhold responsive documents under particular statutory exceptions. *See* CR110-17 (invoking six sections of the PIA and one section of the Texas Alcoholic Beverage Code). In September 2015, the Attorney General ruled that the TABC must release the requested information, subject to only two limited exceptions. CR136-41 (Attorney General Letter Ruling OR2015-18385).

On October 2, 2015, the TABC filed suit against the Attorney General, seeking to withhold responsive documents. McLane intervened on October 26, 2015, and amended its petition on April 4, 2016. In its amended petition, McLane seeks, among other things:

4

- a writ of mandamus ordering the TABC to produce public information responsive to McLane's public-information request;

- a declaration that the PIA, properly construed, requires the TABC to promptly search for and produce documents responsive to public-information requests;

- a declaration that the PIA, properly construed, requires the TABC to conduct a reasonably comprehensive search for public information responsive to public-information requests;

- a judgment requiring Ms. Cook to promptly search for and produce the public information responsive to McLane's request; and

- a judgment requiring Ms. Cook to perform a reasonably comprehensive search for public information responsive to McLane's request.

*See* CR103 (McLane's First Amended Pet. at 16).

On December 8, 2015, the TABC filed a plea to the jurisdiction challenging McLane's declaratory-judgment claim against the TABC, and amended that plea on May 18, 2016. CR71-75; CR148-63. On May 4, 2016, Ms. Cook filed a separate plea to the jurisdiction challenging McLane's declaratory-judgment claim against her. CR142-47. The district court granted both pleas on May 31, 2016. Appendix, Exs. 1-2 (CR214-15). McLane filed a Motion to Vacate and for New Trial on June 9, 2016, and a Motion for Reconsideration on June 13, 2016. CR219-43; CR255; CR259. The district court denied these motions on June 14, 2016. CR244-45.

This accelerated appeal followed.

## SUMMARY OF THE ARGUMENT

The Court should exercise jurisdiction over McLane's declaratory-judgment claim against the TABC to construe the PIA. The UDJA contemplates suits to construe statutes and requires joining those parties with an interest in the outcome. As recognized by the Texas Supreme Court, the UDJA thus waives sovereign immunity over claims to construe statutes.

The Court should also exercise jurisdiction over McLane's ultra vires claim against Ms. Cook. McLane contends that Ms. Cook acted outside of any discretion provided under the PIA by (i) delaying her search and production of responsive public documents for over a year, (ii) failing to engage in a comprehensive search for responsive public documents, (iii) withholding responsive public documents, and (iv) failing to comply with the PIA's requirement to certify a reasonable time for production. McLane's allegations accordingly support jurisdiction over this claim.

## ARGUMENT

### A. Standard of Review: De Novo

This Court reviews district-court rulings on pleas to jurisdiction de novo. *See, e.g.*, *Tex. Dept. of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004); *Abbott v. G.G.E*, 463 S.W.3d 633, 642 (Tex. App.—Austin 2015, pet. filed).

**B.** **The UDJA Waives Sovereign Immunity for Claims to Construe Texas Statutes**

The plain text of the UDJA allows for suits to construe statutes:

> Sec. 37.004. SUBJECT MATTER OF RELIEF. (a) **A person** . . . whose rights, status, or other legal relations are affected by a statute . . . **may have determined any question of construction or validity arising under the** . . . **statute** . . .

Tex. Civ. Prac. & Rem. Code § 37.004(a).[1] The UDJA requires that litigants join those "who have or claim any interest that would be affected by the declaration[.]" *See id.* § 37.006(a). Here, McLane seeks to resolve the parties' competing constructions of the PIA. Based on the text of the UDJA alone, the Court should find that the UDJA waives sovereign immunity over the TABC, an agency with an interest in the construction of the PIA.

The Texas Supreme Court confirmed McLane's reading of the UDJA in *Texas Education Agency v. Leeper*, the seminal case addressing the waiver of sovereign immunity found in the UDJA. 893 S.W.2d 432 (1994). In *Leeper*, the Supreme Court reviewed a district-court judgment that (i) construed the "private-school exemption" to the compulsory school-attendance law, (ii) enjoined school districts and attendance officers from initiating charges of violations of the compulsory-attendance law, unless the charges were based on the district court's construction of the private-school exemption, and (iii) awarded

---

[1] Unless otherwise noted, this brief has added all emphases in quotations.

attorney's fees. The Supreme Court reversed the injunction as "unnecessary," but nevertheless explicitly construed the private-school exemption and allowed attorney's fees. *See id.* at 443-44, 446 ("[W]e conclude that the district court's declaration of the meaning of 'private school' in § 21.003(a)(1), as it relates to home schools, is clearly correct."). *Leeper* held that the UDJA waived sovereign immunity over the plaintiffs' claim to construe the private-school exception:

> Governmental entities joined as parties may be bound by a court's declaration on their ordinances or statutes. **The Act thus contemplates that governmental entities may be—indeed, must be—joined in suits to construe their legislative pronouncements.**

*Id.* at 446; *see also id.* at 442 ("[W]e conclude that the district court had jurisdiction to construe § 21.033(a)(1) [the private-school exemption]."). The Court's attorney-fee award turned on the sovereign-immunity waiver for statutory-construction claims. *Id.* at 446 ("We conclude that by authorizing declaratory judgment actions to construe the legislative enactments of governmental entities and authorizing awards of attorney fees, the DJA necessarily waives governmental immunity for such awards."). *Leeper*'s attorney-fee analysis thus required two holdings on sovereign immunity: (i) the UDJA waives sovereign immunity for a claim to construe a statute (like the private-

8

school exemption), and (ii) the UDJA also waives sovereign immunity over an attorney's fee claim based on a successful statutory-construction claim. *Id.*

The Texas Supreme Court reaffirmed the sovereign-immunity waiver discussed in *Leeper* at least three times. First, in *Texas Natural Resource Conservation Commission v. IT-Davy*, the Court characterized *Leeper* as allowing claims for statutory construction:

> Moreover, the DJA requires challengers to join governmental entities in suits to construe legislative pronouncements, and the DJA authorizes awarding attorneys' fees. **Accordingly, we held [in *Leeper*] that the DJA necessarily waives governmental immunity for attorneys' fees in suits to construe legislative pronouncements.**

> However, *Leeper*'s limited waiver does not allow private parties to sue the State for money damages under the DJA. **And IT–Davy is not asking the trial court to construe a legislative enactment.** Rather, it is seeking a declaratory judgment only in an attempt to have the trial court decide its breach-of-contract claim. Thus, we conclude IT–Davy's request for declaratory relief does not waive the TNRCC's sovereign immunity from suit and cannot be maintained without legislative consent.

74 S.W.3d 849, 860 (Tex. 2002) (citations omitted).

Next, in both *City of Dallas v. Saucedo-Falls* and *City of Dallas v. Dequire*, the Texas Supreme Court characterized *Leeper* as "holding, in an action construing the compulsory school-attendance law, that **the Declaratory Judgments Act, by authorizing actions to construe legislative enactments**

9

**and attorney fee awards, 'necessarily waives governmental immunity** for such awards'". 218 S.W.3d 79, 79 (Tex. 2007) (mem. opinion); 249 S.W. 3d 428, 428 (Tex. 2008) (mem. opinion).

In 2009, however, the Texas Supreme Court appeared to cast some doubt on its reasoning in *Leeper*. In *City of El Paso v. Heinrich*, the Supreme Court, at footnote six, contrasted claims challenging the validity of ordinances or statutes and those claims challenging the government's actions under them. 284 S.W.3d 366, 373 n.6 (Tex. 2009). The Supreme Court found that the UDJA waived sovereign immunity over the former type of claim, but not the latter. *Id. Heinrich* suggested that § 37.006(b)[2] of the UDJA required treating the two claims differently because (i) § 37.006(b) requires a litigant to join the attorney general <u>only</u> when a statute is alleged to be unconstitutional, and thus (ii) that section <u>only</u> waives sovereign immunity for claims challenging the constitutionality of a statute. *Id.* Under this reasoning, if the waiver of sovereign immunity in the UDJA were *limited* to § 37.006(b) (as suggested by this passage of *Heinrich*), the waiver would not cover requests to *construe* a stat-

---

[2]    Texas Civil Practice & Remedies Code § 37.006(b) reads: "In any proceeding that involves the validity of a municipal ordinance or franchise, the municipality must be made a party and is entitled to be heard, and if the statute, ordinance, or franchise is alleged to be unconstitutional, the attorney general of the state must also be served with a copy of the proceeding and is entitled to be heard."

ute, as § 37.006(b) only requires joinder when a statute is alleged to be *unconstitutional*.

The next year, in *Texas Lottery Commission v. First State Bank of DeQueen*, the Texas Supreme Court addressed the point suggested by *Heinrich*'s footnote 6—i.e., whether the waiver of sovereign immunity in the UDJA was limited to *claims challenging the validity or constitutionality of a statute*, or whether the waiver also encompassed *claims to construe a statute*. 325 S.W.3d 628, 634-35 (Tex. 2010). The Court squarely addressed the issue and held that the waiver encompassed claims to construe a statute:

> Next, the Commission asserts that the DJA does not waive immunity because it applies only to suits involving constitutional invalidation and not to those involving statutory interpretation. **But the language in the DJA does not make that distinction**. In *Leeper*, the issue was whether a mandatory school attendance private school exemption statute applied to children taught at home. While the plaintiffs also claimed that enforcement of the statute violated their constitutional rights, the Court did not reach the constitutional issue. Rather, **the DJA discussion was in the context of a statutory clarification**.

*Id.* at 634-35. *DeQueen* also determined that the sovereign-immunity waiver was not limited to § 37.006(b):

> The Commission also argues that the DJA does not waive immunity in this case because it only waives immunity of a municipality, not a state entity. The Commission points to Civil Practice and Remedies

11

Code section 37.006(b), which states that "[i]n any proceeding that involves the validity of a municipal ordinance . . . the municipality must be made a party." **But the Court in *Leeper* did not rely on section 37.006 when it concluded that "governmental entities" are to be joined in suits to construe legislative pronouncements**. Rather, the Court concluded that because the DJA permits statutory challenges and governmental entities may be bound by those challenges, the DJA contemplates entities must be joined in those suits. We have subsequently applied the holding of *Leeper* to different governmental entities. Accordingly, **we disagree that the DJA only waives the immunity of municipalities**.

*Id.* at 634 (citing *Heinrich* and *Leeper*). Thus, *DeQueen* reaffirms *Leeper*, and holds that the UDJA waives sovereign immunity for claims to construe a statute, despite the potentially contrary language in *Heinrich*'s footnote 6. *Id.* at 634-35.[3]

The TABC argues that the Texas Supreme Court overruled the reasoning in *DeQueen* and *Leeper* in *Texas Department of Transportation v. Sefzik*, 355 S.W.3d 618, 620 (Tex. 2011), an opinion issued the year after *DeQueen*.

---

[3] *Leeper* foreshadowed the result in *DeQueen*. In *Leeper*, the Fort Worth Court of Appeals dismissed the plaintiffs' claims after finding that (i) the compulsory-attendance law was penal and (ii) the constitutionality of a penal statute could not be determined in a civil proceeding absent a showing of irreparable injury. 893 S.W.2d at 440. In criticizing the Fort Worth decision, the Supreme Court stated that "[t]he [Fort Worth] court did not explain . . . **why the rule should preclude a construction of § 21.033(a)(1) without reference to its constitutionality**." *Id.* Thus, *Leeper* suggests the result in *DeQueen*—that the UDJA waives sovereign immunity for actions to construe statutes independent from questions of constitutionality.

In *Sefzik*, the Texas Department of Transportation denied an advertising-permit application from Sefzik and further denied Sefzik's request for an oral hearing. Sefzik filed suit, arguing that TxDOT's failure to provide a hearing violated (i) the Due Process and Equal Protection Clauses of the United States and Texas Constitutions and (ii) the "contested case" procedures of the Texas Administrative Procedures Act. *See id.* at 620 & n.1 (citing Tex. Gov't Code § 2001.051).[4] On appeal, Sefzik abandoned his constitutional claims and instead sought only a declaration that the Administrative Procedures Act entitled him to a hearing. *Id.* at 620, 621 n.2. Sefzik's claim thus distanced his case from *DeQueen*—rather than seeking a *construction* of § 2001.051, Sefzik sought a declaration on whether TxDOT had *complied with* § 2001.051. That question is fundamentally an ultra vires claim, not a question of statutory construction. Relying principally on *Heinrich*, the Supreme Court held that, because Sefzik "challeng[ed] TxDOT's actions under [the Administrative Procedures Act]," the state was immune from suit, even though "the same claim could be brought against the appropriate state official under the *ultra vires* exception." *Id.* at 621-22. *Sefzik* cited *Leeper* with approval in its analysis. *Id.* at 622. But it did not explicitly overrule *Leeper*, nor did it cite (or overrule) *DeQueen*.

---

4  Section 2001.051 provides that, "[i]n a contested case, each party is entitled to an opportunity: (1) for hearing after reasonable notice of not less than 10 days; and (2) to respond and to present evidence and argument on each issue involved in the case."

13

Neither *Sefzik* nor *DeQueen* purported to break new ground. Instead, *Sefzik* appeared as a run-of-the-mill application of *Heinrich*, and *DeQueen* applied *Heinrich* and *Leeper*. Given this, *Sefzik* cannot be read to overrule *DeQueen* and *Leeper*. *DeQueen* explicitly found that the UDJA waived sovereign immunity for claims to construe a statute, and cited to footnote 6 in *Heinrich* in reaching that conclusion. *DeQueen*, 325 S.W.3d at 634-35. *Sefzik*, in contrast, did *not* expressly consider whether **a claim to construe a statute** waived sovereign immunity, and instead reaffirmed that **a claim challenging agency action** cannot overcome sovereign immunity. 355 S.W.3d at 620, 621 n.2.[5] Further, if *Sefzik* had held that sovereign immunity barred all claims seeking construction of a statute under the UDJA, *Sefzik* would overrule *Leeper*, as *Leeper* solely addressed a statutory construction claim (and thus formed the singular basis to exercise jurisdiction). But the Texas Supreme Court has not abandoned *Leeper*—the Supreme Court cited *Leeper* approvingly in *Sefzik* and relied on *Leeper*, *Sefzik*, and *DeQueen* in a recent opinion. *See Patel v. Tex. Dept. of Licensing & Regulation*, 469 S.W.3d 69, 76 (Tex. 2015); *see also* CR201 (TABC Reply at 13) (admitting that *Leeper* has not been overruled).

---

[5] "Sefzik is not challenging the validity of a statute; instead, he is challenging TxDOT's actions under it, and he does not direct us to any provision of the UDJA that expressly waives immunity for his claim." *Sefzik*, 355 S.W.3d at 622.

Pre-*Sefzik*, the Austin Court of Appeals had found that a declaratory-judgment claim seeking an interpretation of a statute waives sovereign immunity, as in *Leeper* and *DeQueen*:

- *Star Houston, Inc. v. Tex. Dep't of Transp.*, 957 S.W.2d 102, 111 (Tex. App.—Austin 1997, pet. denied) ("The Texas Supreme Court has interpreted [the UDJA] as: (1) a waiver of sovereign immunity from suits brought to construe or determine the validity of statutes, and (2) a waiver of sovereign immunity for attorneys' fees sought in conjunction with those suits.").

- *Tex. Mun. Power Agency v. Pub. Util. Com'n*, 100 S.W.3d 510, 516 (Tex. App.—Austin 2003, pet. denied) ("Therefore, when the State is a necessary party to a statutory cause of action, such as a UDJA action for interpretation of a statute, sovereign immunity is expressly waived because, were the State not joined, the right to a declaration would have no practical effect.").

Post-*Sefzik*, however, the Austin Court of Appeals has stated inconsistent positions as to whether the UDJA waives sovereign immunity in statutory construction cases. *Compare Tex. State Bd. of Vet. Med. Examiners v. Giggleman*, 408 S.W.3d 696, 707 (Tex. App.—Austin 2013, no pet.) (characterizing *Sefzik* as "emphasizing that UDJA waives state agencies' immunity only as to claims seeking declarations regarding a statute's validity, **not for claims merely seeking construction** or enforcement **of a statute**"); *with Pharmserv, Inc. v. Tex. Health & Human Servs. Comm'n*, No. 03-13-00526-CV, 2015 WL 1612006, at *8 (Tex. App.—Austin Apr. 9, 2015, no pet.) ("While **the UDJA does waive a governmental entity's immunity for a**

**declaration construing a statute**, Pharmserv does not simply seek construction of a statute; rather, it is challenging the state's actions under certain statutes, and it does not cite any provision of the UDJA that expressly waives immunity for such claims.").[6]

The Texas Supreme Court has refused to state that the sovereign-immunity waiver is limited to claims challenging the validity of statutes, despite having the opportunity to do so. *See Sefzik*, 355 S.W.3d at 622 ("Although the UDJA waives sovereign immunity in particular cases, Sefzik's claim does not fall within the scope of those express waivers. **For example**, the state may be a proper party to a declaratory judgment action that challenges the validity of a statute."); *Patel*, 469 S.W.3d at 76 (characterizing *Sefzik* as "restating that state entities can be—and in some instances **such as** when the constitutionality of a statute is at issue, must be—parties to challenges under the UDJA").

Here, McLane's declaratory-judgment claim against the TABC does not challenge agency action. Instead, McLane asks for a resolution of the parties' competing interpretations of the PIA. Specifically, McLane asks the

---

6    Admittedly, the Dallas Court of Appeals agrees with the TABC's interpretation of *Sefzik*. That court held that the sovereign-immunity waiver in the UDJA extends <u>only</u> to claims raising constitutional challenges. *See City of McKinney v. Hank's Rest. Grp.*, 412 S.W.3d 102, 112 (Tex. App.—Dallas 2013, no pet.) (noting the waiver "is limited to claims challenging the validity of ordinances or statutes").

Court to determine if the PIA, properly construed, (i) gives an agency discretion to determine when to search and produce public information, even if that determination results in delay, and (ii) allows an agency to restrict the scope of its search. The declaration will inform McLane's position on the current as well as other extant and future TABC public-information requests—i.e., the declaratory-judgment claim seeks a statutory construction that affects all of McLane's public-information requests (and, likely, requests by others to the TABC as well). The Austin Court of Appeals approved this type of relief in *Texas Municipal Power*:

> An APA appeal allows a district court to rule on a *particular Commission order*, but the UDJA action brought in this case asks for a determination of the *Commission's general authority* to adjudicate the underlying dispute. Thus, a final determination of Municipal Power's UDJA claim would resolve not only the legal status of PUC Docket number 22055 *but the underlying controversy* re-visited in *all three Commission* orders. . . . The question posed to the court by Municipal Power's UDJA action is broader than the effectiveness of one particular order and requests relief more expansive than the reversal of a particular Commission determination. **The narrow appellate procedure provided by the APA to attack a particular Commission order . . . does not displace the district court's ability to determine the scope of an agency's authority through a properly brought UDJA action, as we encounter in this case.**

100 S.W.3d at 519 (italics in original); *see also Tex. Mun. Power Agency v. Pub. Util. Com'n*, 253 S.W.3d 184, 200 (Tex. 2008) (quoting the same and suggesting agreement). As in *Texas Municipal Power*, the Court has subject-matter jurisdiction to construe the PIA divorced from any particular public-information request.

In summary, McLane requests that the Court consider the above-cited Texas Supreme Court opinions to determine whether the reasoning of *Leeper* and *DeQueen* survives *Heinrich* and *Sefzik*. McLane respectfully submits that the Supreme Court has not overruled *Leeper* or *DeQueen*. The Court should thus find that a declaratory-judgment claim to construe a statute waives sovereign immunity under the plain text of the UDJA, *Leeper*, and *DeQueen*.

### C. The Court Should Exercise Jurisdiction Over McLane's Ultra Vires Claim Against Ms. Cook

McLane's ultra vires claim against Ms. Cook is proper because McLane alleges that she violated non-discretionary obligations imposed by the PIA. If Ms. Cook has some discretion when complying with the PIA obligations-at-issue, McLane's ultra vires claim is still proper, as Ms. Cook does not have absolute discretion and McLane alleges that she exceeded any limited discretion granted to her by the PIA.

**1. Under *Heinrich*, the Court Should Exercise Jurisdiction Over McLane's Claim that Ms. Cook Violated Non-Discretionary Statutory Duties**

McLane's ultra vires claim arises from four independent, non-discretionary duties imposed by the PIA: (i) the duty to "promptly" search for and provide public information, (ii) the duty to engage in a comprehensive search that uncovers all responsive public information, (iii) the duty to produce all responsive, non-excepted public information, and (iv) the duty to provide a certification setting forth a reasonable time when requested public information will be available if it cannot be produced within 10 business days. McLane brought its ultra vires claim to require Ms. Cook to comply with these four statutory duties. *Houston Belt*, 487 S.W.3d at 164 ("[*U*]*ltra vires* suits do not attempt to exert control over the state—they attempt to reassert the control of the state . . . . [and] encourage[] enforcement of existing policy.") (quotations and citation omitted). As explained below, each duty is grounded in the text of the PIA and is non-discretionary.

**Duty to "Promptly" Search.** First, the PIA states that Ms. Cook "shall promptly produce public information for inspection, duplication, or both on application by any person to the officer," and defines "promptly" to mean "as soon as possible under the circumstances, that is, within a reasonable time, without delay." Tex. Gov't Code § 552.221. As a result, § 552.221 imposes

the duty for Ms. Cook to "promptly" produce (and thus search for) public information "within a reasonable time" and "without delay."

**Duty for Comprehensive Search.** Second, the PIA provides dozens of specific, substantive, and objective limits on the type of information that must be produced. *See*, *e.g.*, §§ 552.025, .026, .103, .1085 (exceptions for tax rulings, education records, settlement negotiations and crime-scene images). These limitations control the scope of Ms. Cook's search. If Ms. Cook could arbitrarily restrict the items searched, she would create additional categories of documents excepted from disclosure. For example, if Ms. Cook declined to search TABC employees' "deleted items" email folders, she would create a *de facto* exclusion for otherwise responsive public information located only in "deleted items" folders. As a second example, if Ms. Cook declined to search the paper files at the TABC's Arlington field office, she would create a *de facto* exclusion for otherwise responsive public information located only in those files. Because the PIA tightly controls and defines information excepted from public disclosure, *see* §§ 552.022-552.156 (defining public information and exceptions), the PIA imposes a non-discretionary duty to engage in a comprehensive search that uncovers all responsive public information.

**Duty to Make Information Available.** Third, the PIA states that Ms. Cook "shall . . . make public information available for public inspection and

20

copying[.]" § 552.203(1). The PIA thus imposes a duty on Ms. Cook to produce all requested, non-excepted public information.

**Duty to Set a Reasonable Date for Production.** Fourth, the PIA provides that Ms. Cook, if unable to produce public information within 10 business days after a request, must certify that she cannot meet the 10 business day presumptive deadline and set a production date within a reasonable time. § 552.221(d).

The PIA provisions-at-issue with McLane's ultra vires claim do not confer discretion on Ms. Cook. Instead, the relevant provisions state that Ms. Cook "shall" comply with their terms:

- "552.203. GENERAL DUTIES OF OFFICER FOR PUBLIC INFORMATION. Each officer for public information, subject to penalties provided in this chapter, **shall** (1) make public information available for public inspection and copying[.]"

- "552.221. APPLICATION FOR PUBLIC INFORMATION; PRODUCTION OF PUBLIC INFORMATION. (a) An officer for public information of a governmental body **shall** promptly produce public information for inspection, duplication, or both on application by any person to the officer. In this subsection, 'promptly' means as soon as possible under the circumstances, that is, within a reasonable time, without delay."

- "(d) If an officer for public information cannot produce public information for inspection or duplication within 10 business days after the date the information is requested under Subsection (a), the officer **shall** certify that fact in writing to the requestor and set a date and hour within a reasonable time when the information will be available for inspection or duplication."

The term "shall" is a command, not a suggestion. *See Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 493 (Tex. 2001) ("While Texas Courts have not interpreted 'must' as often as 'shall,' both terms are generally recognized as mandatory, creating a duty or obligation."). This is no surprise—the fundamental purpose of the PIA was to ensure that government officials have no discretion to hide information from the public:

> **The people,** in delegating authority, **do not give their public servants the right to decide what is good for the people to know and what is not good for them to know.** The people insist on remaining informed so that they may retain control over the instruments they have created.

Tex. Gov't Code § 552.001(a).

In short, the PIA does not allow Ms. Cook to selectively ignore, postpone, or partially respond to a request for the TABC's public information. Because Ms. Cook is "responsible for the release of public information as required by this chapter," *see* § 552.204, she must ensure that the TABC obeys the mandates of the PIA. As contemplated by *Heinrich*, McLane brings an ultra vires claim to require Ms. Cook to comply with her non-discretionary statutory duties. 284 S.W. 3d at 372.

Ms. Cook argues that McLane cannot assert an ultra vires claim because her statutory duties are not mandatory, arguing that the PIA "builds in discretion that allows a governmental body to determine how to comply" and

22

"McLane['s] complaints are about acts within Cook's discretion[.]" *See* CR205, CR208 (TABC's Reply at 17, 20). Ms. Cook cites only two sections of the PIA for support: (i) § 552.221(a), which states that Ms. Cook "shall promptly produce public information" and defines "promptly" to mean "as soon as possible under the circumstances, that is, within a reasonable time, without delay"; and (ii) § 552.221(d), which states that, "[i]f an officer for public information cannot produce public information . . . within 10 business days . . . the officer shall certify that fact in writing to the requestor and set a date and hour within a reasonable time when the information will be available[.]" CR205 (*Id.* at 17).

But the sections of the PIA cited by Ms. Cook do not provide her with any discretion, much less absolute discretion to delay producing public information. That kind of discretion would render the statute impotent—an agency could avoid producing public information altogether by indefinitely postponing its search and production. In fact, the statute explicitly prevents Ms. Cook from indefinitely postponing her search and production. While Ms. Cook may "set a date and hour" for production, *see* § 552.221(d), the statute still requires the production date to be set within "a reasonable time" and the production to be made "without delay," *see* § 552.221(a), (d). In other words, Ms. Cook

23

cannot artificially set a date and hour that would result in delay, because that procedure would contravene the mandates set forth in § 552.221(a) and (d).

Additionally, this requirement (that Ms. Cook "set a date and hour within a reasonable time" when production will occur) precludes the very behavior at issue here: Ms. Cook has engaged in an extended, rolling production of documents, accompanied by seriatim promises for further documents, instead of completing her search and production by a date certain. Here, McLane contends that Ms. Cook did not "set a date and hour within a reasonable time" for production to occur. CR101-02; CR186-87. Ms. Cook has no discretion to ignore the plain terms of § 552.221(d), and her failure to comply with the statute supports McLane's ultra vires claim.

Further, Ms. Cook failed to show that the PIA allows her to narrow the scope of her search to avoid finding and producing responsive public information. And allowing Ms. Cook to do so would eviscerate the statute—an agency could avoid producing responsive public information by creatively limiting its search to avoid finding responsive information. *See* § 552.221 (requiring production of public information). The statute only limits the scope of search by exempting state libraries from the search, and does not provide Ms. Cook with discretion to rewrite the statute to exempt public information located in particular places. *See* § 552.227.

24

In the same vein, Ms. Cook cannot seriously contest her non-discretionary duty to produce all responsive public information. *See* §§ 552.203(1) (officer for public information "shall" produce public information), 552.221(a) (officer for public information "shall promptly produce public information"). In sum, Ms. Cook has no discretion to refuse to comply with her duty to perform a comprehensive search that uncovers all responsive public information, and the duty to produce all responsive, non-excepted public information in a prompt manner. McLane contends that Ms. Cook violated these non-discretionary duties by (i) unreasonably narrowing the scope of her search to avoid producing public information, (ii) withholding responsive public information, and (iii) failing to produce public information promptly. CR101-04.

Finally, while the PIA states that, if the requested public information cannot be produced within 10 business days, Ms. Cook must certify the same and set a "reasonable time" when the information will be available, *see* § 552.221(d), the statute does not allow Ms. Cook to determine whether the time she selects is "reasonable" and McLane alleges that Ms. Cook has not complied with the PIA's certification requirement. CR101-02. Accepted as true, McLane's contentions support an ultra vires claim under *Heinrich.* 284 S.W.3d at 372.

25

**2.  Under *Houston Belt*, the Court Should Exercise Jurisdiction over McLane's Claim that Ms. Cook Exceeded Any Statutory Discretion**

McLane asserts that the PIA does not allow Ms. Cook any discretion to delay the search and production of public information. *See* § 552.221(a) (defining "promptly" as "without delay"). But even if the Court were to find that the PIA provides Ms. Cook limited discretion to delay production (and it should not), that discretion does not automatically foreclose McLane's ultra vires claim: *Houston Belt* states in no uncertain terms that a suit "complaining of a government officer's exercise of **limited discretion** by alleging that the officer acted without legal authority is a viable *ultra vires* claim." 487 S.W.3d at 158 (alteration and citations omitted; emphasis added); *see also id.* ("[G]overnmental immunity . . . does not protect every act by a government officer that requires some exercise of judgment—a government officer with some discretion to interpret and apply a law may nonetheless act 'without legal authority,' and thus *ultra vires*, if he exceeds the bounds of his granted authority or if his acts conflict with the law itself.") (emphasis omitted).

For example, in *Houston Belt*, because the ordinance-at-issue "expressly defined" a term, the Texas Supreme Court found that a government official did "not have authority to [act] in a way that conflicts with [that term's] definition and usage." *Id.* at 167. The *Houston Belt* opinion also noted that, even

26

though the ordinance-at-issue granted some discretion to determine the area of "impervious surfaces," that discretion was cabined by other sections of the statute that restrained the types of data the official could use in calculating that area. *Id.* at 168. The key holding of *Houston Belt* controls here: the *Houston Belt* plaintiffs properly stated an ultra vires claim by alleging that the official "acted outside his discretion," even though he had some discretion under the statute. *Id.* at 169.

Under *Houston Belt*,

> [G]overnmental immunity bars suits complaining of an exercise of ***absolute*** discretion ***but not*** suits complaining of *either* an officer's failure to perform a ministerial act *or* an officer's exercise of judgment or ***limited*** discretion without reference to or in conflict with the constraints of the law authorizing the official to act. Only when such absolute discretion—free decision-making without any constraints—is granted are *ultra vires* suits absolutely barred.

*Id.* at 163 (bold emphases added; remaining emphases in original).

Accordingly, even if the Court finds that Ms. Cook has some limited discretion when complying with the PIA's provisions-at-issue, the Court should nevertheless exercise jurisdiction over McLane's ultra vires claim, because McLane specifically alleged that Ms. Cook failed to comply with her obligations under the PIA to (i) produce to McLane public information within the TABC's possession, (ii) promptly produce the requested information to

27

McLane, (iii) make reasonable certifications as to when responsive materials would be produced, and (iv) perform a reasonably comprehensive search for public information responsive to McLane's PIA request. *See* CR88-105 (McLane's First Amended Pet., ¶¶ 2, 47, 51).

For example, McLane's public-information request consisted of two discrete categories of documents. The identified categories are similar in scope to routine document requests in civil litigation. In the context of civil litigation, the Texas Rules of Civil Procedure would require that Ms. Cook and the TABC respond to requests for these documents within 30 days. Tex. R. Civ. P. 196.2(a). Here, however, the request has been pending over a year, and Ms. Cook still has not completed her search and production, nor has she certified a date by when the search and production will end. CR187 (advising that the TABC's production will be made not by a date certain, but only after another agency concludes its document review).

Even if the statute gives Ms. Cook discretion to "set a date and hour" for production, the statute requires the selection to be within a reasonable time and Ms. Cook to act "without delay." McLane's request has been pending over one year. McLane thus contends that Ms. Cook's delay has far exceeded any purported discretion bestowed upon her by the PIA. *Houston Belt*, 487 S.W.3d at 165 ("If [the government official's] authority is less than absolute,

then he acts *ultra vires* if he acts outside of his limited authority."). As in *Houston Belt*, the Court "need not conclusively decide" if Ms. Cook overstepped her discretion on the plea to the jurisdiction, but should find that McLane's allegations "are sufficient to confer the trial court with jurisdiction over [McLane's] claim that [Ms. Cook] acted *ultra vires*" in delaying her response to McLane's public-information request, failing to conduct a proper search, failing to produce responsive public information, and failing to set a reasonable date for production. *Id.* at 169.

* * *

In sum, because McLane alleges that Ms. Cook has not complied with four non-discretionary duties imposed by the PIA, the Court should exercise jurisdiction over McLane's ultra vires claim. *Heinrich*, 284 S.W. 3d at 372; *Houston Belt*, 487 S.W.3d at 169. Even if the Court finds that Ms. Cook has some discretion when complying with the four duties identified by McLane, the Court should nevertheless exercise jurisdiction over the ultra vires claim because McLane alleges that Ms. Cook acted outside of any discretion conferred upon her by the PIA. *Houston Belt*, 487 S.W.3d at 161.

**3.     In the Alternative, the Court Should Find that the District Court Erred in Failing to Grant McLane Leave to Replead its Ultra Vires Claim Against Ms. Cook**

If the Court finds McLane's First Amended Petition deficient in assert-

29

ing an ultra vires claim (and it should not), the Court should nevertheless overrule the district court's refusal to allow McLane to replead. CR244-45. On a plea to the jurisdiction, courts "construe the pleadings liberally in the pleaders' favor and look to their intent." *Houston Belt*, 487 S.W.3d at 160. "Only if the pleadings affirmatively negate jurisdiction should the plea to the jurisdiction be granted without affording the plaintiffs an opportunity to replead." *Id.*; *see also Sefzik*, 355 S.W.3d 618 at 623; *City of Austin v. Cherry*, 03-14-00212-CV, 2015 WL 4508819, at \*1 (Tex. App.—Austin July 21, 2015, no pet.).

Because McLane's First Amended Petition did not affirmatively negate jurisdiction, if the Court does not believe that McLane adequately alleged an ultra vires claim against Ms. Cook, it should reverse the district court's decision denying McLane leave to replead and order the district court to permit McLane an opportunity to replead.

## **PRAYER**

For these reasons, the Court should find jurisdiction over McLane's declaratory-judgment claims against the TABC and Ms. Cook.

Dated: July 19, 2016

Respectfully submitted,

BRETT CHARHON
  Texas State Bar No. 24040674
  bcharhon@ccrglaw.com
STEVEN CALLAHAN
  Texas State Bar No. 24053122
  scallahan@ccrglaw.com
**CHARHON CALLAHAN**
**ROBSON & GARZA, PLLC**
3333 Lee Parkway, Suite 460
Dallas, Texas 75219
Telephone: (214) 521-6400
Telecopier: (214) 764-8392

*Counsel for Intervening Plaintiff-*
*Appellant McLane Company, Inc.*

31

# CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the requirements of Texas Rule of Appellate Procedure 9.4. Including the parts of the brief exempted by Texas Rule of Appellate Procedure 9.4(i)(1), the word count feature of Microsoft Word indicates that this brief contains 8,017 words.

STEVEN CALLAHAN

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served, in accordance with Texas Rule of Appellate Procedure 9.5(d), by e-mail on the following attorneys of record for Appellees and the Attorney General on July 19, 2016:

Ann Hartley, Esq.
Cynthia A. Morales, Esq.
ann.hartley@texasattorneygeneral.gov
cynthia.morales@texasattorneygeneral.gov
*Counsel for the TABC and Sherry Cook*

Matthew R. Entsminger, Esq.
matthew.entsminger@texasattorneygeneral.gov
*Counsel for the Attorney General*

STEVEN CALLAHAN

# **APPENDIX**

| EXHIBIT | DESCRIPTION | CLERK'S RECORD PAGE |
|---------|------------|---------------------|
| 1 | Order Granting Plea to the Jurisdiction of TABC | CR214 |
| 2 | Order Granting Plea to the Jurisdiction of Sherry Cook | CR215 |

# Exhibit 1

| | | |
|---|---|---|
| TEXAS ALCOHOLIC<br>BEVERAGE COMMISSION,<br>*Plaintiff*, | § §<br>§ § | IN THE DISTRICT COURT OF |
| V. | § §<br>§ § | |
| KEN PAXTON,<br>ATTORNEY GENERAL OF TEXAS,<br>*Defendant* | § §<br>§ § | |
| | § § | TRAVIS COUNTY, TEXAS |
| MCLANE COMPANY, INC.,<br>*Intervenor-Plaintiff*, | § §<br>§ § | |
| V. | § § | |
| TEXAS ALCOHOLIC BEVERAGE<br>COMMISSION AND SHERRY COOK,<br>CHIEF ADMINISTRATIVE OFFICER<br>AND OFFICER FOR PUBLIC<br>INFORMATION OF THE TEXAS<br>ALCOHOLIC BEVERAGE<br>COMMISSION,<br>*Defendants*. | § §<br>§ §<br>§ §<br>§ §<br>§ §<br>§ § | 53RD JUDICIAL DISTRICT |

Filed in The District Court
of Travis County, Texas

MAY 3 1 2016

At_____4:16___P___M.  C.M.
Velva L. Price, District Clerk

## ORDER GRANTING PLEA TO THE JURISDICTION OF TABC

On May 31, 2016, the Court heard the Plea to the Jurisdiction filed by Defendant Texas

Alcoholic Beverage Commission (TABC), based on sovereign immunity. After hearing argument

and considering the pleadings, the Court hereby GRANTS the Plea of TABC. Accordingly, the

claims of Plaintiff McLane Company, Inc. filed against TABC seeking declaratory relief, including

all claims made under the Uniform Declaratory Judgments Act, are hereby DISMISSED.

Signed this __31st__ day of __M___, 2016.

004614049

_____
Presiding Judge

TABC PTJ Grant

214

# Exhibit 2

## CAUSE NO. D-1-GN-15-004380

| | | |
|---|---|---|
| TEXAS ALCOHOLIC BEVERAGE COMMISSION, *Plaintiff,* | § § § § § § § § § § | IN THE DISTRICT COURT OF |
| V. | § § § | |
| KEN PAXTON, ATTORNEY GENERAL OF TEXAS, *Defendant* | § § § § § | |
| MCLANE COMPANY, INC., *Intervenor-Plaintiff,* | § § § § | TRAVIS COUNTY, TEXAS |
| V. | § § § | |
| TEXAS ALCOHOLIC BEVERAGE COMMISSION AND SHERRY COOK, CHIEF ADMINISTRATIVE OFFICER AND OFFICER FOR PUBLIC INFORMATION OF THE TEXAS ALCOHOLIC BEVERAGE COMMISSION, *Defendants.* | § § § § § § § § § § | 53RD JUDICIAL DISTRICT |

Filed in The District Court
of Travis County, Texas

MAY 3 1 2016

At 4:16 P M. C.M.
Velva L. Price, District Clerk

### ORDER GRANTING PLEA TO THE JURISDICTION OF SHERRY COOK

On May 31, 2016, the Court heard the Plea to the Jurisdiction filed by Defendant Sherry Cook, sued in her official capacity. Finding the Plea well taken, after hearing argument and considering the pleadings, the Court hereby GRANTS the Plea. Accordingly, all claims by Plaintiff McLane Company, Inc. against Sherry Cook are hereby DISMISSED for lack of jurisdiction.

Signed this ___31st___ day of ___May___, 2016.

_____
Presiding Judge

Cook PTJ Grant

004614053

215